Amos KOONCE, Victor Soto, Lloyd Sheldon, John Hayes and Arthur Sohnen, for the benefit of Local 88, International Organization of Masters, Mates and Pilots, AFL–CIO, Plaintiffs,

v.

Joseph GAIER, Frank T. Scavo, and Richard J. Polachek, Defendants.

No. 70 Civ. 4244.

United States District Court,
S. D. New York.

Jan. 13, 1971.

Burton H. Hall, New York City, for plaintiffs.

John R. Harold, New York City, for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

This controversy involves two factions of Local 88, International Organization of Masters, Mates and Pilots, AFL–CIO. Overshadowing their basic differences is the question of payment of legal fees out of the Union treasury.

Plaintiffs, five members of Local 88, described as a Special Constitutional Committee, commenced this action against three individuals, the President, Secretary-Treasurer, and the Vice President of the Local, for alleged breach of fiduciary duty to the Union. The action was authorized by an order of this court pursuant to section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959.[1] The essence of the claim is that the defendants refused to pay to one of the plaintiffs, as Treasurer of the Special Constitutional Committee, the sum of $3,000, which plaintiffs allege was duly authorized by resolutions passed by the membership of the Local.[2]

1. 29 U.S.C. § 501(b). The order was granted ex parte by Judge Wyatt on September 28, 1970.

2. A resolution was adopted at a meeting on July 8, 1970; at a meeting on August 12, 1970, the prior resolution was reaffirmed.

The payment was to defray legal fees and expenses to be incurred in an action previously brought by four of the five plaintiffs allegedly for the benefit of Local 88. That action, entitled Sheldon v. O'Callaghan, 70 Civ. 1279, seeks to enjoin from becoming effective a new constitution of the International, which was adopted following a referendum of the entire union membership. The plaintiffs in that action assert that the new constitution will vastly increase the powers of the top officials of the International, abolish most of the Locals, including Local 88, and invade the rank and file membership's democratic process.[3]

The individual defendants contend that the resolutions authorizing payment to a rank and file committee with authorization to it to disburse from time to time the whole or any portion thereof for legal expenses of a suit not brought by the Union itself were in violation of the constitution and by-laws of the Local. Thus far, the defendants sued as individuals are represented by the Local's attorney, who it appears has been the Local's lawyer for a number of years. The plaintiffs now move to enjoin the defendants from receiving counsel fees from the Local or the services of its counsel in connection with this action. The defendants have cross-moved for an order (1) vacating the order authorizing the commencement of this suit; (2) permitting the defendants to intervene in this action in their representative capacities as officers of Local 88 and, also the Local; and (3) permitting counsel for the Union to appear for the officers in their representative capacities.

It is evident that the very refusal of the defendants to pay out of the Union treasury the $3,000, which plaintiffs assert and defendants deny was validly au-

thorized, constitutes the essence of both the plaintiffs' claim and the defendants' defense thereto. Plaintiffs contend the refusal to make payment authorized under the resolutions constitutes a breach of fiduciary duty to the Union, whereas, contrariwise, defendants contend that to make the payment would constitute such a breach. Thus, the controversy centers about the validity of the resolutions.

The defendants challenge the resolutions upon the ground that in the instance of one it was approved by a vote of 38 to 26 out of a total membership of more than 2,000. Plaintiffs, on the other hand, contend that passage of each resolution met constitutional and by-law requirements. The defendants also press that at no time was any resolution passed by the Union authorizing the Sheldon v. O'Callaghan suit, which, as already noted, is to enjoin the new constitution from becoming effective. They contend that the original resolution which created the plaintiffs' Committee only authorized it to assure that the referendum on the new International constitution was conducted properly and fairly, and that the Committee was never authorized to commence any action in the courts once the constitution was adopted by referendum. Further, the defendants point out that under the resolution the Committee was not to seek redress in the courts until it first exhausted available procedure in the International, which the defendants assert the Committee failed to do, whereas the plaintiffs constituting the Committee contend that in fact they did exhaust all appellate avenues within the International.

And finally, defendants assert that it would violate the Local's constitution and by-laws were they, as duly elected officers, to pay out Union funds to a

3. While we have no immediate concern with the merits of that action, plaintiffs' motion for summary judgment, or in the alternative, for a preliminary injunction to enjoin the new constitution from becoming effective, was denied by Judge MacMahon on November 6, 1970. Presumably, it will be some time before the case is reached for trial. So, too, on this application the court has not been concerned with allegations by plaintiffs' counsel with respect to acts of defendants relating to the new constitution.

rank and file Committee to spend "as it sees fit" for legal fees and costs in an action not authorized by the Union— that the resolution itself is in conflict with the authority delegated to the officers.

The parties are no strangers to litigation pertaining to the Local's affairs. Plaintiffs place great reliance upon that litigation, Holdeman v. Sheldon,[4] to uphold their position, urging denial of intervention to the officers of the Union and the Union, barring Union counsel from representing defendants in their capacities as officers and enjoining the Union from paying legal fees or supplying legal services to them. However, upon the facts, the instant case is quite unlike *Holdeman.* There, the officers who were sued were alleged to have improperly paid out Union funds to persons who had not performed services, and for this breach of duty recovery was sought from them for the benefit of the Union; without question the interests of the Union and officers from whom such recovery was sought were in conflict.[5] Here, the officers assert they are protecting the Union interest from an improper payment under an illegal resolution—that under the Union's basic charter and in the words of section 501 of the Labor-Management Act, they are carrying out their duty "to hold [the Union's] money and property solely for the benefit of the organization and its members. * * * "[6]

The record as here presented does not permit resolution on this motion of the tendered issues. Without deciding them,

the claims of the defendants raise issues of substance. Indeed, the resolutions authorizing payment were challenged by some of the members at the time of their passage as being in violation of the constitution and by-laws; and Union counsel, well before this action was commenced, questioned the validity of the authorization for payment of legal fees for what he termed a "private lawsuit,"[7] that is, the *Sheldon* litigation. But apart from counsel's view, the interests of the Union and the individual defendants are not in conflict—on the contrary, if the defendants' position is upheld, then the Union treasury will not be called upon to disburse $3,000—a benefit to the entire membership. And it is abundantly clear that the defendants' defense and plaintiffs' claim have common questions of law and fact.

 Under the circumstances here presented, the court makes the following disposition:

1. The defendants' motion to vacate the order authorizing plaintiffs to commence this action is denied.

2. The defendants, in their respective representative capacities, are permitted to intervene in this action and they may be represented by Union counsel, provided, however, that no counsel fee for such representation shall be paid out of the Union treasury or charged to the Union pending the final determination of the issues in this case. If defendants' position is sustained, or even if it be found that their actions in refusing payment were based on reasonable judgment and were not inspired by

---

4. 204 F.Supp. 890 (S.D.N.Y.), aff'd. 311 F.2d 2 (2d Cir. 1962).

5. *See also* Morrissey v. Curran, 423 F.2d 393, 400 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970) *and* Segal v. Morrissey, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970); Tucker v. Shaw, 378 F.2d 304, 306–307 (2d Cir. 1967).

6. 29 U.S.C. § 501(a).

7. A release issued on behalf of plaintiffs which urged rejection of the proposed constitution contained, among other matters, the following: "As the Local 88 Committee, elected for that purpose, we are attempting to inform the membership of what the new constitution really means. At the same time, some of us, *as individuals*, are bringing a court action to stop this Power Grab." [emphasis supplied]

bad faith, reimbursement may then be sought out of the Union treasury.[8] And, of course, if plaintiffs prevail, they will have obtained the $3,000 specified in the resolution.

3. The motion for intervention by the Union, qua Union, is denied, since the issues can be resolved in the pending action based upon the conflicting contentions of the plaintiffs and the defendants and defendant-intervenors.

4. The plaintiffs' motion to enjoin payment of fees is granted only to the extent hereinbefore indicated.

---

8. *See* Holdeman v. Sheldon. 311 F.2d 2 (2d Cir. 1962); Highway Truck Drivers and Helpers, etc. v. Cohen, 284 F.2d 162 (3d Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961).