James M. **MORRISSEY** et al., Plaintiffs-Appellants-Appellees,

v.

Joseph **CURRAN** et al., Defendants-Appellees-Appellants,

Martin Segal and Leon Karchmer, Defendants-Appellees.

Nos. 689, 1089–1091, Docket 72–2443, 73–1082, 73–1363 and 73–1383.

United States Court of Appeals, Second Circuit.

Argued April 11, 1973.

Decided June 18, 1973.

Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 865.

Arthur E. McInerney, New York City (Duer & Taylor, New York City, on the brief), for plaintiffs-appellants-appellees.

Joseph P. Altier, New York City (Ira Gammerman, Bromsen, Gammerman, Altier & Wayne, New York City, on the brief), for defendants-appellees-appellants Joseph Curran and Shannon Wall.

Simon H. Rifkind, New York City (Neil H. Cogan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for defendant-appellee-appellant Abraham E. Freedman.

Arthur S. Olick, New York City (Kreindler, Relkin, Olick & Goldberg, New York City, on the brief), for defendant-appellee-appellant William Perry.

Roy L. Reardon, New York City (Melvyn L. Cantor, Ronald L. Ginns, Simpson, Thacher & Bartlett, New York City, on the brief), for defendant-appellee Martin Segal.

Herman E. Cooper, New York City (Surrey, Karasik, Morse & Seham, New York City, on the brief), for defendant-appellee Leon Karchmer.

Before SMITH, HAYS and TIMBERS, Circuit Judges.

**482**

HAYS, Circuit Judge:

This action was brought under the provisions of Section 501 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501 by plaintiffs as members of the National Maritime Union of America. Defendants Curran and Wall were the President and Secretary-Treasurer of the NMU. Defendants Karchmer, Segal and Freedman were trustees of the NMU Officers' Pension Plan. Defendant Perry is the former Assistant to the President of the NMU.

In the original complaint plaintiffs asked for several forms of relief:

(a) an accounting of monies expended by the NMU and the trustees of the NMU Officers' Pension Plan for pension benefits on behalf of non-elected officers and employees of the Union; (b) damages from certain of the defendants; (c) an injunction against the trustees to restrain them from paying any pension benefits to non-elected officers and employees of the Union; and (d) an award of counsel fees.

The origin of the dispute is to be found in a trust agreement executed in 1952 by the National Council of the NMU pursuant to its authority to provide pensions for its officers and employees. Originally, the trust agreement provided for pensions only for officers, and in 1953, the trustees under the agreement adopted a pension plan for the officers of the NMU. The funds of the trust came from an initial contribution from the Union supplemented by quarterly installments.

In 1961 the trust was amended to include in the pension plan certain employees of the Union.[1] The Union contributed additional funds to cover the cost of the expanded pension plan.

In 1964 the pension plan was again altered to include some full time employees of the Union not previously covered.[2]

In this action, originally brought in 1969, plaintiffs charged that the 1961 and 1964 amendments to the trust agreement including non-elected employees in the pension plan were void because they were adopted on behalf of the NMU by the National Office rather than the National Council. The district court granted plaintiffs' cross-motion for summary judgment, holding that the inclusion of certain non-officer employees of the NMU Officers' Pension Plan was improper. The district court ordered the defendants to account, enjoined the trustees from paying pension benefits to non-officers, and directed the trustees to return to the Union all moneys received by them for the benefit of non-officers.

This court affirmed[3] the decision of the district court, Morrissey v. Curran, 423 F.2d 393 (2d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970) and remanded the case to insure that the accounting and the return of funds to the Union treasury proceed as

---

1. The 1961 amendment broadened the coverage of the pension fund to include the following categories of persons:
   1) "Union Representatives," defined as persons employed in the positions of Assistant to the President and Organizer; and 2) "Supervisory or Professional" employees of the Union occupying the positions of Maintenance Supervisor, Bookkeeping Supervisor, Records and Supply Supervisor, Executive Secretary, Publicity Director and Editor of the "Pilot."

2. Under the 1964 amendment, the coverage was broadened to include:
   "All other employees of the union except (a) any employee whose compensation, hours of work or conditions of employment are determined by or with reference to a collective bargaining agreement, (b) any employee whose customary employment by the union is for not more than twenty (20) hours in any one week or for not more than five (5) months in any one calendar year, and (c) aliens employed in a foreign country."

3. The district court had held effective an attempt by the Union to validate retroactively the pension amendments. This court reversed that aspect of the district court's determination.

ordered. The Supreme Court denied certiorari.

On remand, the district court entered judgment against the trust fund and in favor of the Union in the sum of $520,283.39, the amount of contributions made to the plan on behalf of the employees who were held to be ineligible. Although the district court found that the trustees had made unlawful pension payments to employees in the amount of $371,271 it held that except with respect to the payments made to Perry, none of the defendants could be surcharged. As to Perry it held that Freedman, one of the trustees of the pension plan, was personally liable for the payments.

Plaintiffs contend that the judgment of the district court is inadequate because it does not include moneys paid on account of the NMU officers who were appointed rather than elected. Plaintiffs also claim that the trustees should have been surcharged for payments made by them to Irving Brauch, a non-officer employee, that defendants Curran and Wall should have been surcharged for the payments to Perry, that defendants Karchmer and Segal should have been surcharged for the payments to Perry, and that the award of fees to their attorneys and accountants was inadequate. Defendants Curran and Wall appeal on the grounds that the award to plaintiffs' attorneys and accountants was excessive. Defendant Freedman appeals on the grounds that he should not have been surcharged with respect to payments to Perry.

### I.

The first issue raised by plaintiffs is whether the district court correctly ruled that agents, field patrolmen and patrolmen, who were appointed, not elected officers of the NMU, were entitled to pensions under the Officers' Pension Plan. As the district court found, eligibility for payments under the pension plan depended not on whether the persons in question were elected or non-elected but on whether they were officers or only employees. Under the

NMU constitution patrolmen, field patrolmen and agents were clearly designated as officers, though by virtue of amendments to the constitution some of these officers were at some times appointed rather than elected.

The plaintiffs contend that on the prior appeal this court interpreted the NMU constitution to deny coverage to non-elected officers. That issue was not before us on the previous appeal and we did not decide it one way or the other. There is nothing in our prior opinion which prevents our accepting the ruling of the district court which seems to us to be correct.

### II.

The district court held that none of the three trustees was liable for the payments to Brauch, and that Segal and Karchmer could not be surcharged for the payments to Perry, but that Freedman should be so surcharged.

A. Surcharge of Karchmer and Segal

The district court correctly held that the exculpatory provisions of the 1952 Trust Agreement exonerated the trustees except for wilful misconduct and that Karchmer and Segal were not involved in any wilful misconduct in their actions concerning these payments.

The 1952 Trust Agreement provided, in relevant part:

"4.  The Trustee shall not be liable for the making, retention, or sale of any investment or reinvestment as made by them, as herein provided, nor for any loss to, or diminution of the Fund, *except due to their own wilful misconduct.*

"5.  The Trustees shall be protected in acting upon any paper or document believed by them to be genuine and to have been made, executed, or delivered by the proper party purporting to have made, executed or delivered the same, and shall be protected in relying and acting upon the opinion of legal counsel (including

opinion of legal counsel who is or may be a trustee hereunder) in connection with any matter pertaining to the administration or execution of this Trust Fund. *No Trustee shall be liable for any action taken or omitted by him unless such act or omission is the result of wilful misconduct, nor for the acts of any agent, employee, or attorney selected by the Trustees with reasonable care, nor for any act or omission of any other Trustee.* (Emphasis added.)

■ The plaintiffs, arguing that the amendments to the trust agreement "in effect creat[ed] new trusts . . . ", contend that the effective date of the trust agreement was not 1952, but October 28, 1961 and September 28, 1964, the dates of the amendments. This point has significance because between 1952 and 1961 Section 501(a) of the LMRDA became law. That section reads:

"A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

Thus, according to plaintiffs, Section 501(a) invalidates the trustee exculpatory clause, at least as it applies in this case.

There is no reason to treat the amendments of 1961 and 1964 as anything other than they purported to be—that is amendments to the basic agreement which otherwise remained in full force and effect. The amendments made no change whatsoever in the original agreement as far as the exculpatory clause of that agreement is concerned.

Moreover, even if the effective date of the agreement were held to be subsequent to the enactment of Section 501(a), the plaintiffs could not prevail. The ban of Section 501(a) against all

"general exculpatory provisions by a labor organization in its constitution, bylaws or resolutions" does not apply to a standard trustee exculpatory clause of a trust agreement. Neither the express language, the legislative history of the section or the purpose of the section indicate the desire of Congress to include trustee exculpatory provisions within the general ban on exculpatory provisions. The language of the section is clearly aimed at union officers, not trustees; nor can a trust be equated with "a labor organization." The purpose of Congress in enacting Section 501(a) supports this literal interpretation of the provision. The section was aimed at stopping the pilfering of union funds by union officers, not at the conduct of trustees acting in their capacity as fiduciaries.

B. Surcharge of Freedman

■ The district court found that Freedman showed a "reckless indifference" to his duty as a trustee and therefore should be surcharged for the lump sum pension paid to Perry. The facts as shown in the record amply support this finding.

Freedman's opinion letter of January 16, 1969, stated that Perry was "entitled to credit for covered employment for the period through October 20, 1974 based on his contract with NMU, pursuant to which 'contributions have been made by the Union to the Plan for the period through October 20, 1974,' and that Perry was 'entitled to receive immediate payment.'" Morrissey v. Curran, 351 F.Supp. 775, 783 (1972). As the district court noted, "This was wrong, on both counts." In the first place, prepayment of contributions is not authorized by the trust agreement, which contains the only provision authorizing payments to the fund. Second, there was absolutely no basis for Freedman's conclusion that the payment of the lump sum to Perry could be made immediately. It is entirely clear "that the pension was payable on October 20, 1974, and

then only if the trustees at that time exercised their discretion under Article V, Section 8 to pay Perry a lump sum."

These are not complex legal questions on which reasonable men could disagree. Freedman's 1969 legal opinion constituted gross error and warranted the conclusion of the district court that he had acted in reckless disregard of his duty as a trustee.

## III.

### A. Liability of Curran and Wall for payments to the Pension Fund

The evidence in the record shows that Curran and Wall acted in good faith, relying on the advice of the Union's general counsel. In a matter such as this in which the issue is reasonably open to legal dispute an officer acting in good faith is justified in relying on counsel and is not liable, if he so acts, for breach of trust.

### B. Payments by the Pension Fund

The district court said there "is no evidence that on January 16th Curran directed the payment to Perry of $222,200 or directed Freedman to furnish the legal opinion to the trustees. Consequently, on the evidence presented, plaintiffs have failed to prove that Curran breached his fiduciary duty under LMRDA." Morrissey v. Curran, *supra*, at 785.

Plaintiffs now argue that Curran dominated the trustees and it was through this power that the payment to Perry was made. This is properly a factual question for the district court which ruled on the basis of all the evidence presented that the plaintiffs failed to prove their contention. There is no reason for believing that the ruling of the district court on this question was clearly erroneous.

The district court held that the evidence established that Wall played no part in the events of January 16th, and the payment to Perry. There is nothing in the record to indicate that that ruling is incorrect.

### C. Liability of Curran and Wall for payments to Shapiro as trustee

Plaintiffs contend that Curran and Wall are liable for any payments made to Shapiro as trustee. In February, 1972, after the ruling of this court, the Union deposited $460,363 in a bank account under Union control. This money was part of the funds paid by the trustees to the NMU to comply with the court order. The Union estimated that this was the amount necessary to fund the pensions for current employees. A trust agreement was drawn up, and Shapiro was named as trustee. Plaintiffs now attack this action.

Plaintiffs' contentions fail for several reasons. First, the Union never paid the money to Shapiro; the trust agreement was never executed. Even if the money had been paid, the proposed pension plan for current employees was for future payments. Consequently, the establishment of the fund was permissible and not prohibited by this court's prior decision.

On rehearing:

### D. Jurisdiction with respect to claim against Perry

We hold that the district court was correct in finding that it had jurisdiction to enter and in entering a personal judgment against William Perry and in favor of the Pension Plan in the amount of $263,307.00.

In all other respects we adhere to our original decision.

## IV.

The district court awarded counsel fees, accountants' fees and expenses to plaintiffs in the amount of $111,864.-00, and directed that this amount be paid out of the judgment recovered by the Union. This is the correct approach; the Union, not the pension fund should shoulder these costs. The fees requested are adequate but not excessive.

Affirmed.