**James M. MORRISSEY et al., Plaintiffs-Appellees-Appellants,**

v.

**Martin SEGAL and Leon Karchmer, Defendants-Appellants-Appellees,**

**Joseph Curran et al., Defendants-Appellees.**

**Nos. 809, 1067, Dockets 74–2382, 74–2387.**

United States Court of Appeals, Second Circuit.

Argued April 23, 1975.

Decided Nov. 14, 1975.

Arthur E. McInerney, New York City (Duer & Taylor and John S. Chapman, Jr., New York City, on the brief), for plaintiffs-appellees-appellants.

Melvyn L. Cantor, New York City (Simpson, Thacher & Bartlett and Ronald L. Ginns, New York City, on the brief), for defendant-appellant-appellee Martin E. Segal.

Herman E. Cooper, New York City (Stephen Gillers, New York City, on the brief), for defendant-appellant-appellee Leon Karchmer.

Stanley B. Gruber, New York City, for defendant-appellee Abraham E. Freedman.

Joseph P. Altier, New York City (Bromsen, Gammerman, Altier & Wayne, New York City, on the brief), for defendants-appellees Joseph Curran and Shannon Wall.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

These appeals and cross-appeals question an order of the Southern District which apportioned responsibility for at-

torneys' fees incurred by the defendants during the course of this extended litigation arising out of the wrongful payment of pension funds to certain ineligible employees of the National Maritime Union ("NMU"). A summary of the events which have so far transpired is necessary to an understanding of the positions pressed on these appeals.

In 1952, the NMU established a trust fund to provide for the pension of its officers. The underlying action, commenced in February, 1969, alleged that efforts by the Union in 1961 and 1964 to expand the scope of the original Trust Agreement to include non-officers violated a contrary provision in the NMU constitution, enacted in 1960. The suit, brought on behalf of the Union membership pursuant to the provisions of Section 501 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501,[1] sought to recover both those sums forwarded by the Union to the fund earmarked for non-officers and those monies actually distributed from the fund as pension payments to non-officers. The defendants named were Joseph Curran and Shannon Wall, respectively the President and Secretary-Treasurer of the Union; Abraham Freedman, Leon Karchmer and Martin Segal, all trustees of the NMU Officers Pension Fund; and William Perry, former assistant to the President of the Union. Judge Bonsal granted plaintiffs' motion for summary judgment invalidating the challenged payments, ordered the de-

fendants to make an accounting, enjoined the trustees from paying further pension benefits to non-officers, and directed the trustees to return to the Union all monies which had been improperly delivered on behalf of non-officers. *Morrissey v. Curran*, 302 F.Supp. 32 (S.D. N.Y.1969). We affirmed and remanded the case to ensure that the accounting and return of funds to the NMU treasury proceeded in accordance with our mandate. *Morrissey v. Curran*, 423 F.2d 393 (2d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970).

Upon remand, the parties stipulated that the NMU had paid an aggregate sum of $1,628,931 to the pension fund for the accounts of non-elected personnel employed by the Union.[2] Judge Bonsal accepted the contention advanced by defendant Freedman's attorneys that Patrolmen, Field Patrolmen and Agents, although not elected, were officers within the meaning of the Union Constitution and their pensions thus properly payable. As a result, the pension fund was ordered to and did refund to the Union only the reduced balance of $520,283.38. This constituted a savings to the fund of $1,108,637.62 plus interest.

In addition, the district court found that the defendant trustees had authorized unlawful pension payments from the fund to five employees, totalling $371,271. The largest of these was to defendant Perry, against whom judgment was entered for repayment to the

1. Section 501 provides in relevant part:

"(a) The officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from hold-

ing or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. . . ."

2.
|  | *Contributions* |
| --- | --- |
| Patrolmen | $1,021,930.40 |
| Field Patrolmen | 55,692.06 |
| Agents | 31,015.16 |
| Organizers | 81,102.70 |
| William Perry | 84,792.58 |
| Staff Employees | 354,398.10 |
| Total | $1,628,931.00 |

trust of the $222,200 which he had received upon termination of his employment in 1969.[3] The firm of Botein, Hays & Sklar was retained by the plaintiffs to pursue what proved to be unsuccessful collection efforts.

Plaintiffs also sought to surcharge the trustees Freedman, Karchmer and Segal individually for the entire $371,271 wrongfully disbursed from the fund. Although Judge Bonsal found that Segal and Karchmer had acted negligently in hastily approving the large sum payment to Perry, he nevertheless concluded that they were protected from surcharge by an exculpatory provision in the Trust Agreement.[4] Freedman, on the other hand, was held personally liable for his reckless behavior in authorizing the payment and he has reimbursed the fund for the loss it suffered. However, the court below did not find that the impropriety of the Perry transaction tainted the other challenged activities of the trustee-defendants. Rather, it ruled that they had acted without fault in the other four instances in which payments were improperly made to non-officers.[5] *Morrissey v. Curran*, 351 F.Supp. 775 (S.D.N.Y.1972), aff'd, 483 F.2d 480 (2d Cir. 1973), *cert. denied*, 414 U.S. 1128, 94 S.Ct. 865, 38 L.Ed.2d 752 (1974). Thus, it was the district court's finding which insulated them from further liability, not the exculpatory clause incorporated into the Trust Agreement.

The only issue now before us is the extent to which the defendants may charge the fund for counsel fees incurred in defense of this action. In an opinion dated May 1, 1974, Judge Bonsal held that the trustees were personally responsible for that portion of their attorney's fees attributable to their culpable handling of the Perry transaction. In so ruling, he refused to construe the exculpatory provision in the Trust Agreement, which had insulated Segal and Karchmer from personal liability for their negligent conduct, as also requiring indemnification for their attendant legal expenses. Since Segal and Karchmer had already received complete reimbursement, Judge Bonsal ordered them to return to the fund the 39% of their counsel fees which was estimated to be allocable to the defense of the Perry payment. No refund was required of Freedman who had submitted an affidavit affirming that he had himself paid all expenses relating to the Perry surcharge. In crediting Freedman's statement the district court, by implication, accepted an apportionment between counsel fees in-

---

**3.** In total, there were five challenged payments made to non-officers:

| | |
|---|---|
| William Perry | $222,200.00 |
| Sarah Laderhandler | 9,201.00 |
| James Tevan | 12,799.00 |
| Sophia Tevan | 11,561.00 |
| Irving Branch | 115,510.00 |

**4.** The 1952 Trust Agreement provided in relevant part:

"4. The Trustees shall not be liable for the making, retention, or sale of any investment or reinvestment as made by them, as herein provided, nor for any loss to or diminution of the Fund, except due to their own wilful misconduct."

"5. The Trustees shall be protected in acting upon any paper or document believed by them to be genuine and to have been made, executed, or delivered by the proper party purporting to have made, executed or delivered the same, and shall be protected in relying and acting upon the opinion of legal counsel (including opinion of legal counsel who is or may be a trustee hereunder) in connection with any matter pertaining to the administration or execution of the Trust Fund. No trustee shall be liable for any action taken or omitted by him unless such act or omission is the result of wilful misconduct, nor for the acts of any agent, employee, or attorney selected by the Trustees with reasonable care, nor for any act or omission of any other Trustees."

These provisions were repeated in Sections III. C.4 and III. C.5, respectively, of the Trust Agreement as amended in 1961.

**5.** In his order of August 26, 1974, apportioning attorney's fees, Judge Bonsal referred to the Perry payment as "the only payment with respect to which this court found Mr. Segal to have been negligent." The district court further noted that Segal and Karchmer were "in substantially the same position in the litigation."

curred by Freedman in defending against the Perry surcharge, for which only Freedman was chargeable, and counsel fees incurred in defending against other claims for which, according to the opinion rendered by the law firm of Wilkie, Farr & Gallagher, the fund was justifiably charged.

Defendants Segal and Karchmer appeal on the ground that they should not be required to bear any portion of their attorneys' fees. Plaintiffs cross-appeal, arguing that any indemnification was improper for what they allege is the personal defense of the defendant-trustees. Specifically, plaintiffs seek restoration to the fund of: (1) $97,071.05 paid to attorneys representing Segal and Karchmer in this action;[6] (2) $85,829.11 paid to attorneys representing Freedman; (3) $29,611.49 paid by the fund to the Botein firm for the futile attempt to collect the judgment against Perry; and (4) $7,059.84 paid to Wilkie, Farr for its opinion apportioning Freedman's attorneys' fees. We affirm, with one slight modification, the order of the district court.[7]

### I.

As is well known, the LMRDA was enacted in the wake of revelations by the McClellan Committee of corruption at the highest levels of union officialdom.[8] Section 501, which imposes fiduciary duty upon union officers and grants union members access to both federal and state courts to enforce that duty, lies at the heart of the Act's philosophy.

■ Freedman, Segal and Karchmer, as trustees of the NMU Officers Pension Fund, were charged with the highest level of responsibility and care in their management of the trust property. Having failed to conform to that standard with regard to the Perry payment, the defendants are liable for their attorneys' fees attributable thereto.

"[T]he trustee is not entitled to indemnity if the incurring of the expense became necessary because of his own fault. Thus if the trustee negligently permitted a third party to obtain possession of the trust property the expenses of the litigation which resulted must be borne by the trustee personally." 3 Scott, The Law of Trusts, § 245, at 2155 (3d ed. 1967). Any contrary result would undermine both the protection to union members and deterrence of union officials intended by Section 501.[9]

■ Segal and Karchmer maintain that their situation is distinguishable from that of Freedman in that, having acted only negligently, their behavior was protected from surcharge by the exculpatory clause of the Trust Agreement. We find this distinction irrelevant to the question of attorneys' fees now before us.

The general exculpatory provision, set forth in note 4, *supra*, does not in its terms refer to attorneys' fees, but only to actions based upon the opinion of legal counsel. In the absence of explicit language,[10] we refuse to hold that it contemplated the payment of counsel fees by the trust and for the benefit of trustees who are found to have breached their fiduciary duties to the trust. This

---

6. This total is based on figures provided in Judge Bonsal's August 26 apportionment order.

7. Plaintiff's papers suggest that there may be additional claims relating to still other counsel fees paid by the fund which are not before us on this appeal. Any such claims should be determined by the district court in accord with the principles enunciated in this opinion.

8. See, e. g., H.R.Rep.No.741, at 6–7, 78; S.Rep. No.187, 86th Cong., 1st Sess. 5–7 (1959), U.S. Code Cong. & Admin.News 1959, p. 2318.

9. This is especially true when, on the face of the record before us, counsel would seem to have been generously recompensed for their efforts. We note, however, that none of the parties has raised any question as to the reasonableness of the legal fees charged in this case.

10. We leave open and express no opinion as to whether even explicit language sanctioning repayment of counsel fees would be permissible.

is especially so as a subsequent clause is specifically directed to the issue of attorneys' fees. Section III. C.9 provides:

"The trustees shall be empowered to obtain and determine compensation for legal counsel, accounting, technical, actuarial and investment services and such administrative services as they may, in their discretion, find necessary."

The clear import of this latter provision, however, is to protect trustees for counsel fees incurred on behalf of the trust and necessary to its administration. Those fees incurred in the defense of the unlawful Perry payment were solely for the protection of the individual trustees and did not in any way inure to the benefit of the trust itself. We refuse to depart from the well-settled rule that exculpatory clauses are to be strictly construed, Comment, Restatement (Second) of Trusts, § 222(1) (1969), when the result of an expansive interpretation would be the patently inequitable one of imposing upon the trust the costs of attorneys who, with regard to the Perry payment, represented clients whose interests were adverse to those of the trust.

■ Nor does the fact that Segal and Karchmer escaped surcharge entitle them to indemnification. The cases cited by the defendants hold only that union officials charged with breach of fiduciary duties were properly enjoined from expending union funds for their personal defense prior to a full determination on the merits. *Kerr v. Shanks,* 466 F.2d 1271, 1277 (9th Cir. 1972); *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 215 F.Supp. 938 (E.D.Pa.1963), aff'd, 334 F.2d 378 (3d Cir.), *cert. denied,* 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964) (*Highway Truckers II*); *Highway Truck Drivers and Helpers Local 107 v.*

*Cohen,* 182 F.Supp. 608 (E.D.Pa.1960), aff'd, 284 F.2d 162 (3d Cir. 1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961) (*Highway Truckers I*); *Cf. Koonce v. Gaier,* 320 F.Supp. 1321 (S.D.N.Y.1970). Although these decisions indicate that trustees might seek reimbursement in the event that they were eventually exonerated, see e. g. *Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir. 1962); *Highway Truckers I, supra,* at 622, in no case was it suggested that indemnification would be required or even proper after an adjudication that trustees had breached their duty to the union. Segal and Karchmer have not been exonerated for their conduct in the Perry transaction; on the contrary, they escaped surcharge for their negligence only because of the exculpatory provision in the Trust Agreement. Under such circumstances, the policy behind § 501 requires that trust funds not be used to defray their litigation expenses.

■ We note that Segal and Karchmer dispute the circumstances as found by the district court and particularly contest Judge Bonsal's determination of negligence. We are persuaded, however, that as revealed in the record and exhaustively detailed in earlier opinions in the case, the speed and apparent nonchalance with which the defendants authorized the uniquely large payment to Perry were clearly sufficient to support the finding below.

■ We reject the contention of Segal and Karchmer that their duty was discharged when they relied on the advice of counsel, in this case Freedman, as permitted by the Trust Agreement. Segal and Karchmer were well aware that Freedman authorized the payment to Perry with neither time nor opportunity adequately to investigate its propriety.[11] The negligent reliance on counsel cannot

11. Perry was fired at approximately 9:30 on the morning of January 16, 1969. At 10:00 a. m. Segal telephoned Freedman, who was then in Philadelphia, to inquire into the propriety of releasing Perry's pension payments. Freedman, who had been informed of Perry's discharge only a half hour earlier, immediately authorized the payments by dictating his legal opinion, over the phone, to his law partner. Perry received his check that very afternoon, postdated to January 20, 1969.

provide its own justification. *Cf. Dill v. Boston Safe Deposit and Trust Co.*, 343 Mass. 97, 175 N.E.2d 911 (1961); *Mills v. Bluestein*, 275 N.Y. 317, 9 N.E.2d 944 (1937).

■ Similarly, Freedman was not entitled to reimbursement for the fee paid to Wilkie, Farr for its allocation of his litigation costs. Had Freedman acted without fault, such services would have been superfluous. The expense was causally related to his misconduct and he should suffer the consequences. To this extent, we disagree with the order of the district court.

## II.

■ The defendant trustees, however, are entitled to be reimbursed for those fees incurred in defending their behavior in the non-Perry payments. The beneficent aims of § 501 should not be frustrated by construing its terms with such uncompromising rigor that competent individuals are discouraged from assuming a fiduciary role in union affairs. A pension trustee who has acted blamelessly in a good faith effort to promote what he reasonably believed to be the purposes of the trust should not be required to shoulder the burden of his defense when subsequent events prove his decision to have been an improvident one. See 3 Scott, The Law of Trusts, § 188.4, at 1535 (3d ed. 1967).

■ By defending the propriety of the payments made the trustees were not, as the plaintiff suggests, promoting their own interests at the expense of the trust. Since the challenged payments were made in accordance with the terms of the Trust Agreement, as then written, the trustees were seeking to carry out the provisions of the Trust Agreement, as well as justifying their conduct in doing so. See *Weidlich v. Comley*, 267 F.2d 133 (2d Cir. 1959).

■ In addition, Freedman should also recover counsel fees incurred in establishing that Patrolmen, Field Patrolmen and Agents—although appointed—

were officers eligible under the pension plan. This determination saved the fund over one million dollars. The fact that Freedman also personally benefitted from this ruling insofar as it removed a threat of further surcharge, standing alone, is insufficient to negative his good faith in pressing the argument upon the court. The interests of Freedman and the fund were complementary in these circumstances. A trustee is entitled to indemnity for expenses, even though motivated in part by self-interest, to the extent that he thereby in good faith benefits the trust. 3 Scott, The Law of Trusts, § 245.1 (3d ed. 1967). Furthermore, it is a settled equitable principle that the court may, in its discretion, spread the costs of a lawsuit among those who benefit therefrom. *Mills v. Electric Auto-Lite*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Judge Bonsal properly exercised that discretion in this case.

■ For similar reasons, the fee paid to the Botein firm for its attempted collection of the judgment against Perry was properly chargeable to the pension fund. The expenditure was necessary to protect against the possibility that Freedman might succeed on appeal in overturning the judgment against him. If that had occurred, the fund would have had only Perry to collect from and it would have been shortsighted had it not taken prompt steps in that direction.

We emphasize, in contrast to the cases cited by plaintiffs, that defendants here sought reimbursement for their attorneys' fees only after the close of the litigation on the merits. *Cf. Highway Truckers I, supra; Kerr v. Shanks, supra; Koonce v. Gaier, supra.* Concern that the union subsidization of attorneys' fees will represent new bounty to alleged malefactors or enable officer-defendants financially to overwhelm the § 501 plaintiff is inapposite where, as here, the lawsuit has already terminated and the trustees have been substantially absolved. See generally, Counsel Fees for Union Officers Under the Fiduciary

Provisions of the Landrum-Griffin, 73 Yale L.J. 443 (1964). Nor, in this posture, need we confront the potential conflict of interest which might have existed had the trustees' counsel fees been prepaid by the trust. See, e. g., *Milone v. English,* 113 U.S.App.D.C. 207, 306 F.2d 814, 817 (1962). Presented only with an issue of reimbursement, we have had the benefit of hindsight in sorting out those interests of the fund and the defendants which are compatible and those which are not.

In summary, therefore, we hold that Segal, Karchmer and Freedman may properly be indemnified for those attorneys' fees allocable to the defense of all pension payments other than to Perry. This includes those counsel fees spent to secure the determination that non-appointed officers were within the scope of the pension plan. In addition, the fund properly absorbed expenses incurred in the unsuccessful attempt to collect the Perry judgment since the fruits of that collection prior to a final adjudication of Freedman's liability would have inured principally to the benefit of the fund. Segal, Karchmer and Freedman are personally responsible for all attorneys' fees related to the Perry transaction as well as for the Wilkie, Farr allocation of counsel fees.

### III.

Defendants Curran and Wall are parties to this appeal only because they were among those named by plaintiffs in their motion for an order adjudging all defendants in contempt of the district court's July 8, 1970 injunction against defendants' employing counsel at union expense, the denial of which plaintiffs contest as part of this appeal.[12] We see no basis to disturb Judge Bonsal's decision that none of the defendants was in contempt of his July 8 order.

Affirmed as modified.

HAYS, Circuit Judge (concurring in part and dissenting in part):

I would hold that no portion of attorney fees for legal services performed for the trustees, Segal, Karchmer, and Freedman, should be paid from union funds.

Throughout this litigation the personal interests of the individual trustees were in conflict with their responsibilities as fiduciaries of the trust fund to recover any union funds improperly expended. Their object was to protect themselves against a surcharge for any unlawful payments; to accomplish this end they hired their own lawyers and, in view of the outcome of this litigation, should be responsible for the full amount of the attendant counsel fees. See *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 215 F.Supp. 938, 941 (E.D.Pa. 1963), aff'd, 334 F.2d 378 (3d Cir.), cert. denied, 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964) (*Highway Truckers II*). See also, *Kerr v. Shanks,* 466 F.2d 1271, 1277 (9th Cir. 1972); *Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir. 1962) (*per curiam*); *Koonce v. Gaier,* 320 F.Supp. 1321, 1323–24 (S.D.N.Y.1971). All legal services paid for with union funds were rendered on behalf of the individual defendants. In this case, no lawyer could ethically represent both the trustees and the trust in view of the divergence of their respective interests. *Milone v. English,* 113 U.S.App.D.C. 207, 306 F.2d 814, 817 (1962); *Highway Truckers II, supra,* 215 F.Supp. at 940. Cf. *Yablonski v. United Mine Workers of America,* 147 U.S.App.D.C. 193, 454 F.2d 1036, 1041–42 (1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972). As the dis-

---

**12.** The firm of Bloom and Epstein appeared for Curran and Wall as well as for Freedman. Plaintiffs claimed that since Bloom and Epstein were paid in part with union funds, their representation of Curran and Wall was in violation of the July 8th order. There is no issue as to counsel fees since it does not appear that Bloom and Epstein allocated any part of their fee to the defense of Curran and Wall and neither Curran nor Wall claims to have paid personally any part of the Bloom and Epstein fee.

trict court stated in a similar situation in *Highway Truckers II:*

> "None of the payments were received for benefits conferred on the union. Such payments would have constituted a breach of legal ethics if retained in matters where the union and defendants had conflicting interests." 215 F.Supp. at 940.

Imposing counsel fees upon the fund also ignores the fact that the work of each defendant's counsel was duplicative of the work of the other counsel employed and that any benefits which may have accrued to the fund from the services of these attorneys were purely incidental to the protection of defendants' individual interests. The attorneys were engaged to defend Segal, Karchmer, and Freedman against a group of related claims, none of which was frivolous, and each defendant was found to have breached his duty to the union. Under these circumstances, allocation of expenses is inappropriate and undermines the salutary purposes of the LMRDA.[1] Similarly, the supplementary proceedings undertaken to collect the judgment against Perry, which if successful would have satisfied the judgment against Freedman, clearly operated for Freedman's personal benefit and he, not the trust fund, should bear the expense. *Cf. Highway Truckers II, supra,* 215 F.Supp. at 941.

*Weidlich v. Comley,* 267 F.2d 133 (2d Cir. 1959), relied on by the majority, is inapposite to the situation presented by the instant case. In *Weidlich* the defendant-trustee had been charged by plaintiff with mismanagement of the trust assets. At trial, however, the district judge decided " '*all* of the issues between the plaintiff and the defendant . . . in favor of said defendant.' " 267 F.2d at 134 (emphasis supplied). In light of that finding this Court upheld the district judge's allowance of legal expenses to the defendant out of the trust assets in defending his conduct as trustee.

> "When the trustee's administration of the assets is unjustifiably assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor's purpose." 267 F.2d at 134.

In contrast to *Weidlich,* in the case at bar the defendant-trustees were all held to have breached their fiduciary obligations to the union fund. None of the challenged payments authorized by them were found to have been proper or in any way beneficial to the fund. *Compare Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) which held that plaintiff-shareholders who had established a violation of the securities laws by their corporation and its officers should be indemnified for their legal expenses by the corporation which had received the benefit of their derivative action. *Mills, supra* at 389–90, 90 S.Ct. 616. In the present case the only beneficiaries of the attorneys' services were the individual defendants. Under these circumstances they, not the union, should bear the full cost of their own defense. See 3 Scott, The Law of Trusts § 188.4, at 1535 (3d ed. 1967) ("Where the trustee employs an attorney for his individual benefit and not for that of the estate, he must pay

---

1. Even if allocation were somehow justifiable, plaintiffs are correct in their contention that the method of allocation advanced by defendants is without basis in fact. In reaching the 61–39% figure utilized below, defendants first made an allocation between "work specifically performed with respect to the issue of personal liability" and other services. This division was impermissible since 100% of the services were performed in order to protect the individual defendants from personal liability. Defendants next attempted to calculate that portion of the "personal liability" fees which were attributable to the Perry payment by applying a percentage obtained by dividing the dollar amount of the Perry claim, $222,200, by the total amount of money improperly paid to non-officers, $371,271. This suballocation is also unjustifiable. It relies entirely upon the tenuous presumption that there is a necessary correlation between the monetary size of a claim and the legal work required to support or refute it, while ignoring such critical factors as the complexity of the relevant legal issues and the amount of difficulty encountered and time spent in their resolution.

the attorney out of his own pocket and is not entitled to reimbursement from the trust estate" (footnote omitted)); *In re Caffrey's Will,* 254 App.Div. 684, 3 N.Y. S.2d 443 (2d Dept. 1938) (Mem.). *Cf. Matter of Estricher,* 202 Misc. 431, 111 N.Y.S.2d 295 (Sur.Ct.N.Y. County 1952), *aff'd without opinion,* 281 App.Div. 828, 118 N.Y.S.2d 922 (1st Dept. 1953).