William E. BROCK, Secretary, U.S. Department of Labor, Plaintiff-Appellee,

v.

Joseph P. MAZZOLA, Robert E. Buckley, Robert J. Costello, et al., Defendants-Appellants.

No. 85–1687.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1986.

Decided July 10, 1986.

George R. Salem, San Francisco, Cal., James Callear, Washington, D.C., for plaintiff-appellee.

Lawrence Alioto, Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for defendants-appellants.

Before GOODWIN, NORRIS, and BRUNETTI, Circuit Judges.

NORRIS, Circuit Judge:

This appeal arises out of an action brought by the Secretary of Labor charging trustees of the Pension Fund of Local 38 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (the "Fund") with breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982).[1] Judgment was entered against the trustees ordering them to make good to the Fund for losses resulting from the breach of fiduciary duty in making loans at below-market rates. See Donovan v. Mazzola, 761 F.2d 1411 (9th Cir.1985); Donovan v. Mazzola, 716 F.2d 1226 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

After judgment was entered, appellant Joseph P. Mazzola, who was business manager and treasurer of Local 38 as well as one of the trustees ordered to make restitution to the Fund, wrote a letter to union members advising them that he would make a report at an upcoming membership meeting on the "restitution liabilities levied by Judge Weigel on the ... Trustees." The letter went on to say:

> The Executive Board is recommending that the Union pay the amount of such restitution liabilities levied by the court on the labor Trustees, excluding legal fees. The amount of the restitution liabilities of the labor Trustees could run into hundreds of thousands of dollars as you will hear in the report. The Executive Board also recommends that there be *no* dues increase or special assessment as a result of this action. A secret

ballot vote will be taken on this recommendation.

When a copy of the Mazzola letter was sent anonymously to Judge Weigel, the district judge presiding over the ERISA action, the Secretary requested an injunction prohibiting the trustees from receiving reimbursement from their union for their ERISA liabilities. Following a show-cause hearing, Judge Weigel enjoined the trustees "from receiving any reimbursement, either direct or indirect, of any expense incurred by them in connection with this lawsuit, including any amounts paid by them as restitution for their breaches of fiduciary obligations ... from any labor organization subject to the Labor-Management Reporting and Disclosure Act of 1959 ...."[2] Judge Weigel explained his rationale for issuing the injunction as follows:

> Because said conduct did not benefit any sponsoring labor organization, any reimbursement to defendant trustees for the judgment of restitution by any labor organization subject to the Labor-Management Reporting and Disclosure Act of 1959, whether or not such reimbursement were authorized by the general membership of such organization, would violate the provisions of § 501(a) of that Act. See Morrissey v. Segal, 526 F.2d 121, 126–27 (2d Cir.1975); Kerr v. Shanks, 466 F.2d 1271, 1277 (9th Cir. 1972). The Court therefore exercises its equitable power to prevent defendants from violating federal law in the course of satisfying the Court's judgment of restitution. See United States v. Coca-Cola Bottling Co., 575 F.2d 222, 278 (9th Cir.), cert. denied, 439 U.S. 959 [99 S.Ct. 362, 58 L.Ed.2d 351] (1978); see also, Federal Trade Comm'n v. Ruberoid, 343 U.S. 470, 473 [72 S.Ct. 800, 803, 96 L.Ed. 1081] (1952).

We have jurisdiction to hear the trustees' timely appeal of the injunction under 28 U.S.C. § 1292(a)(1) (1982).

---

1. The Fund is an "employee benefit plan," 29 U.S.C. § 1002(3), and is therefore covered by the fiduciary standards of ERISA.

2. The trustees were also enjoined from receiving reimbursement from any fund subject to ERISA. The trustees do not appeal this aspect of the injunction.

The trustees contend on appeal that the district court exceeded its jurisdiction under ERISA by granting relief against threatened violations of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 153, 158–60, 164, 186, 187, 401–531 (1982) (popularly known as the Landrum-Griffin Act). While they do not question the Secretary's standing to bring an action to redress breaches of fiduciary duty under ERISA (*see* section 502(a)(2), (5), 29 U.S.C. § 1132(a)(2), (5) ), they assert that the Secretary has no standing to bring an action to redress violations of the Landrum-Griffin Act. The trustees rely upon section 501(b) of Landrum-Griffin, which explicitly provides that only union members have standing to sue if the union itself fails to bring an action after being requested to do so. Thus the thrust of the trustees' case on appeal is that the district court, in granting the Secretary's request for an injunction to prohibit violations of the Landrum-Griffin Act, contravened the will of Congress that only aggrieved union members may seek relief to redress or prevent violations of Landrum-Griffin.

The Secretary defends the injunction on the basis of the district court's broad equitable powers to redress breaches of fiduciary duty under ERISA. As its caption implies, section 409(a) establishes "Liability for Breach of Fiduciary Duty." Specifically, it provides that:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter

shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a) (1982). The Secretary argues that the language of section 409(a) making errant fiduciaries subject to "such other equitable or remedial relief as the court may deem appropriate" is broad enough to support an injunction prohibiting ERISA fiduciaries from receiving money from a union in violation of the Landrum-Griffin Act. Thus the question we must decide is whether a district court exercising jurisdiction under ERISA may enjoin violations of the Landrum-Griffin Act notwithstanding the absence of a union plaintiff.[3]

■ Section 501(a) of the Landrum-Griffin Act makes union officials fiduciaries in the management of union assets.[4] Section 501(b) creates liability for breach of fiduciary duty. Specifically, it provides:

When any ... representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such ... representative in any dis-

---

**3.** Because the appeal raises a pure question of law, the injunction is reviewed *de novo*, rather than for abuse of discretion. *United States v. State of Oregon*, 718 F.2d 299, 303 n. 5 (9th Cir.1983).

**4.** Section 501(a) provides in pertinent part:

The ... representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, ... to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any

resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization. ... A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy. *29 U.S.C. § 501(a) (1982).*

trict court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. 29 U.S.C. § 501(b) (1982).

■ There is no disagreement that a union plaintiff is a condition precedent to an action brought under section 501(b) of the Landrum-Griffin Act.[5] Our court has so held. *Horner v. Ferron*, 362 F.2d 224, 229 (9th Cir.), *cert. denied*, 385 U.S. 958, 87 S.Ct. 397, 17 N.E.2d 305 (1966). Section 501(b), in denying non-union plaintiffs standing to sue, reflects a Congressional concern that regulation of unions could lead to excessive governmental intervention in the internal affairs of unions. This concern was clearly expressed in the Senate Committee Report on the Landrum-Griffin Bill as follows:

In acting on this bill the committee followed these principles:

1. The committee recognized the *desirability of minimum interference by Government in the internal affairs of any private organization.* Trade unions have made a commendable effort to correct internal abuses; hence the committee believes that only essential standards should be imposed by legislation. Moreover, in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents.

S.Rep.No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad. News 2318, 2323 (emphasis added). Thus while Congress made union representatives liable for breaches of duty, Congress limited the opportunities for judicial intervention in the internal affairs of unions by confining the exercise of judicial power to actions brought by union plaintiffs. Evidently Congress was concerned that if non-union plaintiffs had standing to sue under section 501, unions and their leaders would be vulnerable to harassment by outsiders motivated by considerations other than the welfare of the union and its members.

In enjoining violations of the Landrum-Griffin Act in this ERISA action, the district court effectively circumvented the Congressional command that only union plaintiffs have standing to bring actions to redress or prevent Landrum-Griffin violations. We cannot agree with the Secretary that section 409(a) of *ERISA*, which grants district courts equitable power to fashion appropriate relief for violations of *ERISA*, manifests a Congressional intent to override the specific standing requirements of section 501(b) of the Landrum-Griffin Act.

---

5. The Secretary of Labor accepts this interpretation of the Landrum-Griffin Act. Earlier in these proceedings against appellants for breach of their fiduciary duties under ERISA, in response to an inquiry from Judge Weigel whether the trustees could be reimbursed by the union for contempt fines levied against them for failure to comply with the court order directing them to make restitution to the Pension Fund, the Secretary declared:

Section 501(b) of the LMRDA expressly provides that, under appropriate circumstances, a union member can file suit for appropriate relief with respect to a violation of section 501(a). No mention is made in that section of any right to sue by the Secretary, and the Department of Labor has taken the position that it may not maintain a cause of action to redress violations of section 501(a); that right is vested exclusively in aggrieved union members.

Letter from Norman P. Goldberg to Judge Weigel (October 24, 1983).

Later, at the preliminary injunction hearing before Judge Weigel, the Secretary articulated his legal theory that, notwithstanding his lack of standing to bring an action to redress violations of section 501(a) of Landrum-Griffin, he had standing under ERISA to seek an injunction prohibiting the errant trustees from receiving union money in reimbursement for their liabilities to the Pension Fund. He stated:

We would not be able to come into this court to file an independent lawsuit in the name of the Secretary of Labor seeking to enjoin conduct under 501(a). We are seeking that as an auxiliary proceeding in the context of the existing lawsuit which we do have standing to bring under ERISA.

6 Reporter's Transcript at 12.

In defending the district court's use of the equitable powers granted by ERISA to prevent violations of the Landrum-Griffin Act, the Secretary invites us to interpret ERISA in a way that would give the Secretary standing to seek redress of violations of the Landrum-Griffin Act, which Congress pointedly chose not to do. Thus we hold that a district court cannot enjoin violations of the Landrum-Griffin Act in an ERISA action brought by the Secretary of Labor.[6]

We find support for our interpretation of ERISA in *Massachusetts Life Ins. Co. v. Russell,* — U.S. —, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985). In *Massachusetts Life,* the Supreme Court held that under ERISA a fiduciary to an employee benefit plan could not be held personally liable to a plan beneficiary for extra-contractual damages such as damages for emotional distress or punitive damages. The Court rejected the argument that section 409(a) of ERISA, in providing for "such other equitable or remedial relief as the court may deem appropriate," gave courts wide discretion to award extra-contractual damages. A fair reading of ERISA, the Court reasoned, indicated that Congress intended to authorize only "plan-related" statutory relief. *Id.,* 105 S.Ct. at 3091. The Court said:

> A fair contextual reading of [ERISA] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

*Id.* at 3090. Similarly, the concerns animating ERISA—possible misuse of the assets of employee benefit plans—are obviously different from the concerns animating the Landrum-Griffin Act—possible misuse of union assets. An injunction in an ERISA case prohibiting threatened violations of Landrum-Griffin is thus no more plan-related than the extra-contractual ERISA damages rejected in *Massachusetts Life.* Congress expressly provided for Landrum-Griffin remedies in that statute, and limited those remedies to actions brought by union plaintiffs.[7]

Both the district court and the Secretary rely on *United States v. Coca-Cola Bottling Co.,* 575 F.2d 222, 228 (9th Cir.), *cert. denied,* 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978), and *FTC v. Ruberoid,* 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081 (1952). Such reliance is misplaced. Those cases were brought under the antitrust laws and dealt with equitable relief fashioned to serve the purposes of the antitrust laws.[8] In contrast, the instant case involves equitable relief fashioned in an ERISA case to serve the purposes of a different statute, one which narrowly restricts the class of plaintiffs with standing to sue. Further, in *Coca-Cola Bottling,* our court quoted *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946), as follows: "[T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command." Section 501(b) of the Landrum-Griffin Act provides such "a clear and valid legislative command"—that

---

**6.** It is unnecessary for us to decide in this appeal whether union reimbursement of the trustees for their ERISA liabilities would constitute a violation of section 501(a) of the Landrum-Griffin Act.

**7.** We express no opinion on the question whether fiduciaries could be enjoined in an ERISA action from receiving reimbursement for ERISA liabilities from *any* source whatsoever, whether from insurance, a union, or in the case of ERISA fiduciaries representing employers, from their corporations. The question whether the purposes of ERISA would be served by requir-

ing trustees to pay their ERISA liabilities out of their own pockets is not before us. The district court found only that the injunction would serve the purposes of Landrum-Griffin, not of ERISA. Thus the scope of our holding is limited to injunctions that prohibit union reimbursement for ERISA liabilities in violation of the Landrum-Griffin Act.

**8.** Presumably, under the Secretary's interpretation, an ERISA plaintiff can seek equitable remedies for antitrust violations despite lack of antitrust standing.

only union plaintiffs may bring actions to redress violations of that statute.[9]

To the extent that it prohibits the trustees from receiving reimbursement for their ERISA liabilities "from any labor organization subject to the Labor-Management Reporting and Disclosure Act of 1959", the injunction is VACATED.

**9.** We reject the Secretary's argument that the trustees are estopped from appealing the injunction prohibiting union reimbursement for their ERISA liabilities because of the trustees' failure to appeal a prior order prohibiting union reimbursement for their legal fees in defending the action. Failure to appeal the order prohibiting reimbursement for legal fees plainly does not effect a waiver of their right to appeal the injunction prohibiting reimbursement for their ERISA liabilities.