In re CAPTRAN CREDITORS TRUST, Debtor.

CAPTRAN CREDITORS TRUST, Club Baha, Ltd., a foreign corporation and Tropical Properties, Ltd., a foreign corporation, Plaintiffs,

v.

David McCONNELL, Gerald McHale, and McHale, Ezzell and Co., a Florida professional association, Defendants.

Bankruptcy No. 85-0045-8P1.
Adv. No. 87-158.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 4, 1990.

Malka Isaak, Tampa, Fla., Richard W. Epstein, for plaintiffs.

Francis H. Cobb, Charles W. Pittman, Tampa, Fla., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case, and the matter under consideration is a three-count Complaint by Captran Creditors

Trust (CCT), Club Baha, Ltd. (Club Baha), and Tropical Properties, Ltd. (Tropical Properties) against David McConnell (McConnell), Gerald McHale (McHale), and McHale, Ezzell and Co., P.A. The Plaintiffs seek both compensatory and punitive damages in Count I based on the alleged breach of fiduciary duty owed to the Plaintiffs by Defendants McConnell and McHale. The Plaintiffs in Count II seek compensatory and punitive damages for the alleged professional negligence of Defendants McConnell and McHale. In Count III, the Plaintiffs seek damages and other relief from Defendants McConnell, McHale, and McHale, Ezzell, and Co. for their alleged violations of ch. 772 of the Florida Statutes.

Although Defendant McConnell failed to timely file an answer to the Plaintiffs' Complaint and a default was entered against him by the Clerk before this trial commenced, a final judgment was not entered against McConnell. Additionally, Count III of the Plaintiffs' Complaint was dismissed by Order of this Court after the conclusion of the evidence presented at the final evidentiary hearing. This leaves for consideration the claims set forth in Counts I and II of the Complaint, that is whether McHale is liable for damages based on a breach of fiduciary duty and based on alleged negligence of a professional.

This Court, having heard extensive testimony of witnesses and having considered the documentary evidence, together with the record, now finds and concludes as follows:

In 1982, Captran Resorts International, Inc. (CRI), a corporation based in Lee County, Florida, was engaged in the business of developing resorts and selling timeshare interests to the public. At the same time, CRI through its president, Keith Trowbridge, entered into a joint venture with Club Baha and Tropical Properties, which were controlled by Jack Grabowski, for the development of a similar enterprise in the Bahamas. A disagreement between the parties resulted in litigation which ultimately concluded with a $1.7 million Final Judgment against CRI and its president, Trowbridge, and in favor of Club Baha and Tropical Properties. (Plaintiffs' Exh. No. 1.)

CRI, faced with the inability of satisfying the judgment and the possibility of losing some, if not all, of its property because it could not post a supersedeas bond, filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in this court on July 16, 1982. Soon after CRI filed its bankruptcy petition, CRI and some of its largest creditors, including Club Baha and Tropical Properties, entered into extensive negotiations. The purpose of their negotiations was to ultimately satisfy CRI's creditors and to resolve CRI's problems outside of the provisions of Chapter 11 and the bankruptcy court. (Plaintiffs' Exh. No. 1.)

The negotiations resulted in an agreement which provided that the creditors of CRI would form a trust, Captran Creditors Trust (CCT). The assets of CRI, with one minor exception, were to be transferred to CCT to be the Trust res, and the creditors of CRI were to be the Trust beneficiaries. The Defendants McConnell, an attorney, and McHale, a certified professional accountant (CPA), were appointed as the initial Trustees for this newly created Trust. A copy of the Agreement, a synopsis of its development, and copies of related documents are included in what is referred to as "the yellow book." (Plaintiffs' Exh. No. 1.) The Agreement was finalized in December, 1982. Based on the settlement, this Court entered an Order granting CRI's Motion to Dismiss the Chapter 11 case of CRI on December 6, 1982.

The Agreement provided that CCT would acquire from CRI certain specified assets of CRI and would assume any debts and liabilities associated with those assets. The assets transferred to CCT would be marketed and sold, and the net proceeds of the sales would go to the Trust for the benefit of the Trust beneficiaries. Under the Agreement, CRI was to act as the marketing agent for the Trust properties and, as a condition of the Agreement, was to receive 38% of the sale price of the properties sold.

CRI did, in fact, act as the marketing agent for the Trust properties. All sales were through a real estate firm owned and controlled by Trowbridge, and they were processed through Northern American Title Insurance Agency, Inc. (NATIA), a title company also owned and controlled by Trowbridge. All sales records of the Trust properties were under the exclusive control of CRI's controller, George Mills (Mills), and there is no doubt that McHale accepted the recordkeeping of Mills without question or without any independent verification. NATIA handled all closings and maintained all of the records regarding the sales of timeshares. Evidence produced at trial leaves no doubt that neither McHale nor McConnell kept any records regarding the sales transactions; instead, they simply let Trowbridge and NATIA handle all of the details regarding the sales and recordkeeping of CRI.

The Agreement specifically described the Trustees' duties, powers, and liabilities. Regarding the Trustees' liability, the Agreement provided that "except for *proven dishonesty*, a Trustee shall not be personally liable for any act or omission in connection with his duties as Trustee." (Plaintiffs' Exh. No. 1 at p. 117.) (emphasis supplied) The Agreement further provided that the Trust was created "for the primary purpose of liquidating the assets transferred to it with no objective to continue or engage in the conduct in any trade or business."

Notwithstanding the stated purpose of the Trust, i.e., to liquidate the Trust assets, the evidence presented clearly established that CRI continued to develop and build on two of the undeveloped properties conveyed to the Trust by the Agreement. The record leaves no doubt that the Trustees agreed, at least tacitly, to this activity by CRI, and at no time voiced any objection to it. On the contrary, McHale consented to this development because he believed it would maximize the return to the beneficiaries of the Trust. It appears that even though the Trust Agreement did not authorize any additional development, this development produced a net benefit to the Trust

to the extent of $1.7 million. (Defendant's Exh. No. 7.)

It further appears that both the Trustees and Grabowski attempted to sell all of the Trust assets in bulk, but were unable to find a buyer. (Defendant's Exhs. No. 51, No. 52.) To solve their dilemma, the Trustees developed a liquidation plan pursuant to which the Trust assets would be distributed in-kind to the beneficiaries of the Trust in exchange for extinguishing their beneficiary interest in the Trust. (Plaintiffs' Exh. No. 66.) However, CRI resisted in-kind distribution (Defendant's Exh. No. 6), and threatened to sue the Trustees if they proceeded with this plan. (Defendant's Exh. No. 6.) This resistance by CRI is understandable in light of a provision in the Agreement which preserved for CRI any residual interest in the Trust properties, if one remained after the liquidation of the Trust assets and after the satisfaction of the interest of the Trust beneficiaries.

In order to protect their position, the Trustees filed a suit for declaratory relief requesting that the Circuit Court of Lee County, Florida approve the in-kind distribution. The Trustees also sought a temporary restraining order to remove CRI as the marketing agent for the Trust assets; however, that request was denied. (Defendant's Exhs. No. 44 and No. 47.) While this in-kind distribution was clearly contemplated by the Agreement, it was never consummated. Be that as it may, this Court is satisfied that the Trustees did nothing improper by promulgating this plan, and certainly they were not negligent for trying to effectuate this type of distribution. (Plaintiffs' Exh. No. 1.)

During the pendency of the declaratory suit in the Circuit Court of Lee County, several of the Trust beneficiaries assigned their interest in the Trust to Club Baha. As a result, Club Baha ended up with over 90% of the beneficial interests of the Trust. Soon after the assignments were made, Grabowski, as president of Club Baha and Tropical Properties Ltd. and on behalf of 90% of the Trust beneficiaries, discharged McHale and McConnell from their duties as Trustees and appointed successor Trustees.

(Plaintiffs' Exh. No. 44.) McHale submitted as his final accounting of his Trusteeship a report prepared by Mills (Plaintiffs' Exh. No. 2). By all accounts, this report did not even come close to being an acceptable final accounting of a trustee, and it did not pretend to be one. The report was nothing more than a compilation of the Trust assets and the beneficiary interests that existed at the time the Trust was created; it did not reflect what really existed when McHale's Trusteeship ended.

The successor Trustees and Club Baha then entered into an agreement pursuant to which the successor Trustees agreed to convey the bulk of the Trust assets to Club Baha, in exchange for Club Baha's interest in the Trust. Before the transfer of the Trust assets by the successor Trustees to Club Baha was finalized, certain parties who claimed to be creditors of CCT filed an involuntary Petition against CCT in this Court. After extensive preliminary skirmishes and prior to the trial, CCT finally consented to the entry of the order for relief on the eve of the trial. The Plan of Reorganization proposed by Club Baha and Grabowski, which was a total liquidation plan, was ultimately confirmed. This Plan of Reorganization basically produced the very same result that was contemplated by the in-kind distribution plan proposed by the original Trustees, McHale and McConnell.

Based on the foregoing facts, the Plaintiffs filed a three-count Amended Complaint against the Defendants. The Plaintiffs' claim in Count I is based on the contention that McHale, in his representative capacity as co-Trustee, breached his fiduciary duty to the Trust beneficiaries. In support of this proposition, the Plaintiffs contend that McHale owed a duty to discharge his obligation as Trustee in good faith and with ordinary care and diligence. The Plaintiffs argue that McHale breached that duty, especially because he earlier served as an accountant for Club Baha and Tropical Properties before the Trust was even formed, and he therefore owed a special fiduciary duty to these Plaintiffs. The claim in Count II is based on the contention that McHale is liable for damages which the Plaintiffs allegedly incurred as a result of McHale's purported professional negligence as a CPA. As noted earlier, the claim in Count III was dismissed by this Court at the close of the evidence.

This record leaves no doubt that the conduct of McHale as a Trustee certainly left a lot to be desired, and that his detached, lackadaisical attitude toward the Trust affairs may be charitably characterized at most as benign neglect. McHale's lack of involvement with the trust was clearly evidenced by his unquestioned acceptance of the Mills Report as a final accounting of his Trusteeship. In addition, it is clear from the record that McHale granted almost a complete free reign to Trowbridge, Mills and NATIA involving sales of Trust assets, sales closings, and the recordkeeping of the Trust assets. It must be conceded that *Fla.Stat.* § 737.302 provides that a trustee with special skills is under a duty to use those skills. Thus, if McHale's performance is measured by the standard of a CPA who was engaged to serve in that capacity, one would be hard pressed to conclude that his performance met the standards of a reasonable CPA.

The Plaintiffs also argued that McHale should be held to a higher standard when his performance as Trustee is evaluated. Specifically, the Plaintiffs contended that because McHale represented the Plaintiffs Tropical Properties and Club Baha in connection with their 1982 litigation against CRI, he owed a special fiduciary duty to the Plaintiffs.

█ Considering the proposition urged by the Plaintiffs, this Court is satisfied that McHale was not engaged to serve as a CPA–Trustee. Further, McHale is not bound by any special higher standard because the firm in which he is an accountant represented the Plaintiffs Tropical Properties and Club Baha in their litigation against CRI.

The Trust Agreement does not provide that McHale was to serve as a CPA for the benefit of the Trust. The yellow book does provide a brief history of McHale's background, and includes the fact that he was a

partner in the accounting firm which represented the Plaintiffs Tropical Properties and Club Baha in their litigation against CRI. However, it is clearly stated in the yellow book that the biographical sketch and disclosure of the Trustee's business interest was made available because it might appear that there was a conflict of interest between the Trustee and CCT. (Plaintiffs' Exh. No. 1.) Alternatively, assuming without admitting, that if McHale is judged as a CPA Trustee, this Court is satisfied that the expert testimony presented at trial showed that McHale did not, in fact, fall below the standards of a CPA, and the Plaintiffs did not prove otherwise by clear and convincing evidence.

The exculpatory clause in the Trust Agreement specifically addresses the liability of a trustee in the exercise of his duties as a trustee. Thus, the ultimate question is whether or not the enforcement of this exculpatory clause would be contrary to public policy and should be disregarded, or whether this Court should give full effect to the unambiguous language of the Trust Agreement. There is no doubt that Grabowski was a highly sophisticated businessman, and the parties were of equal bargaining power. This was certainly an arm's length transaction. The Trust beneficiaries cannot argue that they were either ill-represented or unsophisticated. This Court is satisfied that it is appropriate to enforce this exculpatory clause.

Considering the exculpatory clause, it should be noted that several courts have upheld exculpatory provisions in trust agreements. An exculpatory clause in a trust agreement which provided that the trustees shall not be liable for the making of any investments, nor for any loss or diminution of the trust fund "except due to their own willful misconduct" was upheld in *Morrissey v. Curran*, 483 F.2d 480 (2d Cir.1973). A similar provision was used to exonerate a trustee bank of liability, notwithstanding the Plaintiff's argument that the provision served to excuse the trustee from exercising reasonable care in managing the Plaintiff's pension assets. *Kolen-*

*tus v. Avco Corp.*, 798 F.2d 949 (7th Cir. 1986).

This Court recognizes that although a Trustee's liability may be limited in a Trust, such a limiting provision will be strictly construed against the Trustee and will not save the Trustee from liability for bad faith. 56 *Fla.Jur.2d* § 47. It is equally axiomatic, however, that a Trust provision will be construed according to its plain meaning where the words are not uncertain or ambiguous. 56 *Fla.Jur.2d* § 5, 76 *Am. Jur.2d* § 19, *Knauer v. Barnett*, 360 So.2d 399, 405 (Fla.1978). Based on the evidence presented at trial, this Court is satisfied that although McHale might have acted in a less than professional manner and may possibly have acted beneath the standard of sound business practices, he was not dishonest. In fact, there is not one scintilla of evidence in this record which would support a claim that he acted in a dishonest fashion while dealing with the Trust assets. There were neither allegations nor evidence that McHale engaged in self-dealing, or that he profited from his actions as a co-Trustee. This Court is therefore satisfied that absent any showing of dishonesty on his part, he cannot be held personally liable for any acts or omissions in the performance of his duties as co-Trustee.

As noted earlier, the Clerk previously entered a default against Defendant McConnell, but no final judgment has been entered by default against McConnell. In light of the fact that there was no meaningful evidence presented by the Plaintiff concerning any conduct by McConnell, who is a co-Trustee, this Court is satisfied that it would not be appropriate to enter a judgment against this Defendant in spite of the fact of the entry of the default.

A separate Final Judgment will be entered in accordance with the foregoing.