**Ed KERR, for and on behalf of himself and all other members of Screen Extras Guild, Inc., a labor organization, Plaintiff-Appellant,**

v.

**H. O'Neil SHANKS et al., Defendants-Appellees.**

**No. 26926.**

United States Court of Appeals, Ninth Circuit.

Sept. 20, 1972.

Rehearing and Rehearing In Banc Denied Nov. 3, 1972.

Richard A. Perkins, (argued), Los Angeles, Cal., for plaintiff-appellant.

Robert W. Gilbert (argued), Alexander H. Schullman, of Gilbert & Nissen, Beverly Hills, Cal., Leo Geffner, of Geffner & Satzman, Los Angeles, Cal., for defendants-appellees.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and MURPHY,* District Judge.

DUNIWAY, Circuit Judge:

Kerr, a member of the Screen Extras Guild, Inc., a labor union, brought this action on behalf of all members of that union against certain officers of the union, alleging that defendants had breached their fiduciary obligations under 29 U.S.C. § 501. Kerr appeals from the district court's partial denial of the equitable relief sought and its refusal to award him litigation expenses, including attorney's fees. We reverse.

* Honorable Thomas E. Murphy, United States District Judge, Southern District of New York, sitting by designation.

## BACKGROUND

The complaint charged that defendants breached their fiduciary duties by refusing to hold a special referendum of the membership as required by the Guild Constitution and By-Laws. That constitution provides that the Board of Directors must take a referendum vote of the membership within 20 days after the filing of a written referendum petition signed by 10% of the membership in good standing. Any action of the Board is subject to the referendum procedure and may be nullified or amended by vote of 51% of the membership voting. A valid petition was filed on June 3, 1968, demanding a referendum on the Board's action in rehiring the National Executive Secretary, Shanks, for a minimum one-year period beginning May 2, 1968. The Board, including defendants, refused to hold the referendum despite the advice of union counsel that the Constitution made such a vote mandatory in this situation. On August 5, 1968, Kerr again asked defendants to conduct the referendum, to cease paying Shanks' salary and expenses, and to recover the money already paid him in the interim. Those requests were refused. This action was filed August 14, 1968, to compel the holding of the referendum, to redress defendants' wrongful refusal to conduct it within the mandatory 20-day period, and for an injunction against continued salary payments to Shanks and restitution of Shanks' salary paid after expiration of the 20 days on June 23, 1968.

On July 21, 1969, after the one-year employment contract in dispute had expired, the district court granted a portion of the plaintiff's motion for summary judgment, ordering the membership referendum to be held, but reserving the other issues for trial. Before the referendum was held, Kerr attempted to inspect and copy the Guild's membership list, but the union would not let him do so. The district court refused to stay the mailing of the ballots, but impounded the returned ballots to give Kerr an opportunity to go into state court for enforcement of his right to inspect and copy the list. Kerr's mandamus action in state court was successful but by the time the state court order was enforced, after a contempt hearing on defendant's failure to comply with the writ of mandamus, the district court had dissolved the stay, the referendum ballots had been counted, and a victory for the management had been announced.

The trial was on April 21 and 22, 1970, and resulted in judgment for defendants. Plaintiff appeals, asserting that the judgment of the district court was erroneous in four respects:

(1) final judgment for defendants was inappropriate because the evidence clearly established that defendants had breached the fiduciary duties imposed by § 501;

(2) the proper remedy for the violations was restitution of the union funds paid to Shanks pursuant to the invalid action of the Board;

(3) the trial court should have ordered restitution to the Guild of its funds used for the defense of these defendant-officers;

(4) the trial court erred in not awarding attorney's fees and other litigation expenses to plaintiff. We hold that Kerr is right, as to all four grounds.

### 1. *Breach of fiduciary obligations.*

Implicit in the decision of the court below is the conclusion that no violation of § 501 was established. We do not agree.

The defendants refused to abide by the referendum procedure established in the Guild Constitution and By-Laws. This wrongful denial of the right of the members to institute a referendum on any action of the Board, and the Board's action in continuing to pay union funds to Shanks pursuant to the challenged action were both breaches of defendants' fiduciary duties to the union and its members, in violation of Title V of the

Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501 et seq.[1]

In deciding this issue we need not align ourselves with either side on the question whether § 501 is limited in its scope to fiduciary duties of union officers in their handling of union money or property. Compare Gurton v. Arons, 2 Cir., 1964, 339 F.2d 371, 375, with Johnson v. Nelson, 8 Cir., 1963, 325 F.2d 646, 649–651.[2] Plaintiff here alleged and proved that part of defendants' violation of their fiduciary obligations was the wrongful disbursement of union funds to Shanks pursuant to an action of the Board which had been challenged by the proper constitutional procedure, which procedure was willfully ignored by defendants. Thus defendants' fiduciary duties regarding use of union money and property was in issue, and the court below had jurisdiction under even the more restrictive view of § 501.

█ The trial court's decision suggests two justifications for finding in favor of defendants. First, the referendum vote, which was finally held pursuant to court order 14 months later

---

1. 29 U.S.C. § 501, in pertinent part, provides:

"§ 501. *Fiduciary responsibility of officers of labor organizations— Duties of officers; exculpatory provisions and resolutions void*

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws, and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

*Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses*

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

2. The position of the court in Johnson v. Nelson that § 501 is not limited to breaches of trust directly involving officers' handling of union money or property has been termed the "majority" view. Cefalo v. Moffett, D.C.Cir., 1971, 449 F.2d 1193, 1198 n. 15. The question remains open in this circuit. Our citation of Gurton v. Arons, *supra*, in Phillips v. Osborne, 9 Cir., 1968, 403 F.2d 826, 830, does not commit us to follow *Gurton*. We cited *Gurton* as merely illustrative of a point of view.

than required by the Guild Constitution, supported the Board's action in rehiring Shanks. However, that referendum did not ratify the action of defendants in refusing to obey the Constitution's mandatory referendum procedure and in continuing to pay Shanks' salary under the challenged Board resolution. The referendum dealt only with the Board's action in rehiring Shanks; it did not purport to seek membership approval of the Board's 14-month refusal to conduct the referendum or its continued payment of Shanks' salary in that period.[3]

■ Second, the trial court points to that section of the Guild Constitution which states that pending the outcome of the referendum vote, the challenged action of the Board "shall have full force and effect, unless otherwise ordered by the Board of Directors." We do not interpret this provision as giving the Board open-ended authority to perpetuate indefinitely its actions which have been properly challenged through referendum petitions by refusing to conduct the referendum. Rather, we think the provision permits the challenged Board action to remain in effect during a reasonable time, after the mandatory referendum has been held within the required 20-day period, to allow time for the tabulation of ballots and certification of the result. We leave to the district court on remand to decide what constitutes a rea-

sonable period of time for the vote tabulation.

2. *Restitution of Shanks' Salary.*

■ Plaintiff argues that the defendants should be required to return the union funds wrongfully paid to Shanks after expiration of the 20-day period following the legitimate referendum request (plus a reasonable allowance for tabulating the votes). Having found that defendants breached their fiduciary obligations, we agree that the proper remedy is restitution of the money paid to Shanks. The period involved would begin at the expiration of the reasonable time for tabulating the votes and end on the date when the result of the later referendum was ascertained.

■ We reject defendants' suggestion that restitution is inappropriate here because Shanks rendered valuable services to the union in return for his salary and he is therefore entitled to keep the money as compensation. Shanks was aware of the provisions of the Guild Constitution and of the Board's wrongful denial of a referendum vote; he continued to perform services and receive salary and expense payments from the Board at his own risk. It may be that Shanks will have an action in *quantum meruit* against the union for the reasonable value of his services, but that does not affect the restitution relief sought here. The union is entitled to have returned

---

3. Even if the referendum had included that issue and those actions had been retroactively "approved" by a majority of those voting, it would be of no avail to defendants here. To permit such validations of officers' breaches of fiduciary obligations would be inconsistent with the purposes of the Labor-Management Reporting and Disclosure Act, one of which is to protect union members, including a minority, from the improper practices of union managment or an unscrupulous majority of the membership. Morrisey v. Curran, 2 Cir., 1970, 423 F.2d 393, 398–99, cert. denied, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 96; Highway Truck Drivers and Helpers Local 107 v. Cohen, E.D.Pa., 1960, 182 F.Supp. 608, 620–621, aff'd 3 Cir., 1960, 284 F.2d 162, cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744; Highway Truck Drivers and Helpers Local 107 v. Cohen, E.D. Pa., 1963, 215 F.Supp. 938, 941, aff'd 3 Cir., 1963, 334 F.2d 378, 381, cert. denied, 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335. It is true that the cited cases involved union resolutions purporting to authorize the use of union funds for the defense of union officers charged with § 501 violations, but the principle which those courts applied is equally applicable to an attempt by the union retroactively to validate the § 501 violations themselves. Once a breach of fiduciary obligations has been established, the union is entitled to relief under § 501, irrespective of tardy purported "authorizations" of the breach by resolutions or constitutional amendments.

to it the money which was taken from it by defendants in violation of their fiduciary responsibilities; that it may be liable to Shanks for an undetermined amount for services rendered and received need be considered by a court only when and if Shanks seeks appropriate relief in *quantum meruit*.

3. *Use of Guild funds for defense of individual officers.*

■ Plaintiff contends that the Guild is entitled to restitution of union funds expended in defense of the officers charged with § 501 violations. The law was correctly stated by the District of Columbia Circuit in Milone v. English, D.C.Cir., 1962, 113 U.S.App.D.C. 207, 306 F.2d 814, 817:[4]

"As a general proposition we think funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership. . . The treasury of a union is not at the disposal of its officers to bear the cost of their defense against charges of fraudulently depriving the members of their rights as members."

This is such a case.

■ Defendants were charged with willfully disobeying the Guild Constitution by denying union members their guaranteed right to vote in a properly petitioned-for-referendum. The defendants admittedly utilized union counsel and union funds for their defense. The purpose of Title V of the Labor-Management Reporting and Disclosure Act is to insure that members who think that union officers have violated their fiduciary duties shall be able to hold those individual officers responsible in a court of law. The real beneficiaries of a successful § 501 action are the union and its entire membership. "How can the salutary effect of the Act be attained by this court if payment of defendants' legal costs are paid [by the union] in any case where officers are charged with acts inimical to the union?" Highway Truck Drivers and Helpers Local 107 v. Cohen, E.D.Pa., 1963, 215 F.Supp. 938, 941, affirmed, 3 Cir., 1964, 334 F.2d 378, cert. denied, 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335.

■■ There are two answers to defendants' argument that they should be permitted to use union counsel and funds to defend themselves in a § 501 action as a means of protecting officers from vexatious and harassing litigation. First, the statute itself provides a measure of insurance against groundless claims by requiring that a § 501 suit proceed only upon authorization of a judge who has found "good cause" for the plaintiff to commence the action. *See* Horner v. Ferron, 9 Cir., 1966, 362 F.2d 224, cert. denied, 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305, and Addison v. Grand Lodge of the International Association of Machinists, 9 Cir., 1962, 318 F.2d 504. Second, the policy of permitting a union to reimburse its officers who have successfully defended themselves against charges of violating § 501 provides adequate protection of union officers from baseless litigation. Holdeman v. Sheldon, 2 Cir., 1962, 311 F.2d 2, 3.

4. *Award of litigation expenses to plaintiff.*

The trial court denied plaintiff's request for award of litigation expenses,

---

4. *See also* Highway Truck Drivers etc. v. Cohen, E.D.Pa.1960, 182 F.Supp. 608, 620–621, aff'd 3 Cir., 1960, 284 F.2d 162, cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744: "To allow a union officer to use the power and wealth of the very union which he is accused of pilfering, to defend himself against such charges, is totally inconsistent with Congress' effort to eliminate the undesirable element which had been uncovered in the labor-management field. To allow even a majority of members in that union to authorize such an action, when, if the charges made against these defendants are true, it is these very members whom the officers have deceived, would be equally inconsistent with the Act." *Accord*, Tucker v. Shaw, 2 Cir., 1967, 378 F.2d 304; Holdeman v. Sheldon, S.D.N.Y., 1962, 204 F.Supp. 890, 892–893, aff'd 2 Cir., 1962, 311 F.2d 2, 3; International Brotherhood of Teamsters etc. v. Hoffa, D.D.C., 1965, 242 F.Supp. 246, 255–256.

including attorney's fees, although the statute clearly authorizes the court to grant such fees to successful plaintiffs in § 501 actions.[5]

Two reasons appear for the trial judge's refusal to award litigation expenses to the plaintiff here. The first is that judgment was rendered in favor of the defendants. However, we reverse on the issue of the defendants' violation of § 501. Thus this justification for refusing to award litigation expenses to plaintiff is no longer available. The trial court also interpreted the authorizing provision of § 501(b) as limiting an award of attorney's fees to cases in which a money recovery to plaintiff results. We do not accept that construction of § 501(b). Any plaintiff who is successful in establishing a breach of fiduciary duty by defendant-officers in a § 501 action is entitled to the application of § 501(b)'s authorization. In any such case, the district judge may, in the exercise of his sound discretion, award attorney's fees and other litigation expenses to the plaintiff. A money recovery is not necessary. Bakery & Confectionery Workers International Union of America v. Ratner, 1964, 118 U.S.App.D.C. 269, 335 F.2d 691, 696; Johnson v. Nelson, 8 Cir., 1963, 325 F.2d 646, 653; Local No. 92, International Association of Bridge, Structural and Ornamental Iron Workers v. Norris, 5 Cir., 1967, 383 F.2d 735, 742–743; Retail Clerks Union Local 648 v. Retail Clerks International Association, D.D.C., 1969, 299 F.Supp. 1012, 1021–1022; Highway Truck Drivers and Helpers Local 107 v. Cohen, E.D.Pa., 1963, 220 F.Supp. 735, 737–738. In any case, a money recovery will exist in this case because of the restitution of union funds wrongfully paid to Shanks.

The exercise of the court's discretion is governed by established principles of equity. One such principle is that active representatives of a class should not be saddled with the expense of legal efforts to benefit the entire class. Mills v. Electric Auto-Lite Co., 1970, 396 U.S. 375, 389–397, 90 S.Ct. 616, 24 L.Ed.2d 593. When a § 501 suit is successful in benefiting the union and its membership, the representative plaintiff will normally be entitled to litigation expenses. Bakery & Confectionery Workers, etc. v. Ratner, *supra*; Johnson v. Nelson, *supra*. Here, plaintiff unquestionably benefitted the union and its entire membership by successfully enforcing the provisions of the union constitution and thereby vindicating the right of the members to petition for and receive referendum votes on Board actions. Denial of litigation expenses in this situation would discourage resort to the courts by union members to establish their rights under the Labor-Management Reporting and Disclosure Act.[6]

We hold that equitable principles require that plaintiff be granted his litigation expenses from the union treasury in this case. The amount of those expenses, including reasonable attorney's fees, will be determined by the district court on remand.

5. *Different judge on remand.*

Plaintiff's request that the case be assigned to a different judge on remand is denied. We do not believe that the trial judge in this case demonstrated such a marked prejudice against the plaintiff or his counsel that the extraordinary action of reassigning the case to a different judge on remand is required.

Reversed and remanded with directions.

---

5. *See* 29 U.S.C. § 501(b), *supra* n. 1.

6. The litigation expenses to which plaintiff is entitled in this case includes his expenses in securing and enforcing a writ of mandamus in the state court involving the defendants' conduct of the federal court-ordered referendum. See Bakery & Confectionery Workers, etc., v. Ratner, *supra*, 335 F.2d at 695, n. 9. In light of our disposition today of this plaintiff's appeal in a related case, Kerr v. Screen Extras Guild, 9 Cir., 1972, 466 F.2d 1267, we need not consider plaintiff's additional assertion that he is also entitled to his litigation expenses in that case.