Angela DOYLE, Frederick Gilliam, Sylvia Grant–Gutierrez, Betty Hughley, Georgianna Johnson, Edward Kay, Steven Kramer, Luis Matos, James Murphy, Mark Shanker, Unity and Progress–Save Our Union Committee, and Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL–CIO, Plaintiffs,

v.

Doris TURNER, Telbert King, Claude Ferrara, Philip Kamenkowitz, Ramon P. Malve, Jo–Ann Marshall, Herb Binger, Barrington Moore, Karl Rath, Floris Saunders and Floyd Shephard, Defendants.

No. 86 Civ. 2792 (CSH).

United States District Court, S.D. New York.

May 25, 1995.

Gladstein, Reif & Meginniss and Levy, Pollack, Ratner & Behroozi, P.C., New York City, for plaintiffs (James Reif and Fanette Pollack, of counsel).

Gareth W. Stewart, New York City, for defendants.

### MEMORANDUM AND ORDER

HAIGHT, District Judge:

The defendants in this much-litigated case are former officers of plaintiff Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU AFL–CIO (the "Union"). Eight of the eleven individual defendants, having been granted summary judgment dismissing all of plaintiffs' claims against them, now move for reimbursement of their attorneys' fees, costs and disbursements.

### BACKGROUND

Plaintiffs commenced this action in April of 1986 against defendants who were then officers of the Union. Plaintiffs filed an amended complaint in late 1986 and a second amended complaint in 1990. The second amended complaint alleged claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* and Section 501(a) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*

The case has been the subject of a number of prior opinions by this Court. Familiarity

with all of them is presumed. For present purposes it is sufficient to say that at the time the individual plaintiffs filed a suit, the individual defendants were officers of the Union. However, the Union election in 1984, which installed the individual defendants as officers, was set aside, and in a June, 1986 election the individual plaintiffs prevailed. While the original complaint was filed while defendants were still in office, the action was pressed since their departure by the plaintiffs, now including the Union itself.

Since the inception of the litigation, all the defendants except for Philip Kamenkowitz have been represented by Gareth W. Stewart, Esq. and attorneys with whom he is associated. In opinions dated May 26, 1993 and July 5, 1994, addressing plaintiffs' second amended complaint, the Court directed that summary judgment enter dismissing all claims against defendants Claude Ferrara, Ramon P. Malave, Jo–Ann Marshall, Herb Binger, Barrington Moore, Karl Rath, Floris Saunders, and Floyd Shephard. These defendants now move for an order directing payment of their attorney's fees and costs. While the motion papers do not specify the expected source of those monies, presumably defendants' principal target is the Union itself.

The moving defendants rely upon three sources of authority. First, they claim that the requested relief may be had under Section 501 of the LMRDA, 29 U.S.C. § 501, as interpreted by case law. Secondly, defendants rely upon the "bad faith" exception to the usual American Rule in respect of attorney's fees, contending that plaintiffs acted in bad faith in initiating and continuing this action against them. Third, defendants rely upon provisions of New York law applicable to the reimbursement of corporate officers and directors who have been vindicated in litigation against them. *See* N.Y. Not–For–Profit Corporation Law, §§ 722–725; N.Y. Business Corporation Law, §§ 724(c), 725(c), 726(a) (McKinney's Supp.1995).

Plaintiffs contend that there is no authority entitling defendants to Court-directed payment of attorney's fees and costs.

## DISCUSSION

### *Right to Assert a Claim*

Section 501(a) of the LMRDA provides that officers of a Labor Union "occupy positions of trust in relation to such organization and its members as a group." Section 501(b) authorizes suits by members of labor organizations against officers who have breached their fiduciary duty. That subsection provides in part:

> No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown which application shall be made ex parte. The trial judge may alot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

The statute does not deal expressly with the payment or reimbursement of attorney's fees incurred by union officers who are charged with violating their fiduciary duties. However, the cases make it clear that union funds cannot be expended for the personal defense of officers "prior to a full determination on the merits." *Morrissey v. Segal*, 526 F.2d 121, 127 (2d Cir.1975) (citing cases); *Milone v. English*, 306 F.2d 814, 817 (D.C.Cir.1962) ("As a general proposition we think funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership."); *United States v. Local 1804–1, International Longshoremen's Association, AFL–CIO*, 732 F.Supp. 434, 437 (S.D.N.Y.1990).

The question then arises, what of the union officer who successfully defends against the charges against him, and incurs legal expenses in doing so? In *Morrissey v. Segal*, the Second Circuit held that union pension fund trustees charged with breaches of fiduciary duty in permitting unauthorized pension payments, and whose actions were vindicated in part, "are entitled to be reimbursed for those fees incurred in defending

their behavior" to the extent that the defense succeeded. 526 F.2d at 128. Defendants at bar contend that the rationale of *Morrissey v. Segal* entitles them to payment of their attorney's fees and costs.

As plaintiffs at bar point out, in *Morrissey v. Segal* the pension fund advanced attorney's fees to the defendant trustees. After litigation on the merits, the plaintiffs sought to recover those payments, "arguing that any indemnification was improper for what they allege is the personal defense of the defendant-trustees." 526 F.2d at 126. The Second Circuit rejected that argument, to the extent that the attorney's fees were properly allocable to claims upon which the trustees had been exonerated.

Thus the *Morrissey* court concluded that the trustees "may properly be indemnified for those attorneys' fees allocable to the defense of all pension payments other than to Perry." *Id.* at 129. In the later case of *Morrissey v. Curran,* 650 F.2d 1267, 1277 (2d Cir.1981), the Second Circuit characterized its decision in *Morrissey v. Segal* as upholding "an allocation of the costs of legal services that could be reimbursed by a union in a § 501 action, where the defendant officer was held liable on some charges while other charges were dismissed."

Plaintiffs at bar contend that these cases and others cited by defendants do no more than declare a union's authority to voluntarily reimburse the attorneys' fees of vindicated officers without offending the LMRDA. The Union, which never had any intention of paying defendants' legal expenses and has not done so, argues that in the absence of a provision in the constitution or by-laws or a voluntary payment by the Union, there is no authority entitling defendants to a Court-directed payment of legal expenses incurred by vindicated officers.

The question appears to be one of first impression. Nonetheless, I conclude that the rationale of *Morrissey v. Segal* entitles defendants at bar to the relief they seek.

As I understand the Second Circuit's analysis in that case, the voluntary advancing of legal costs to the accused trustees was not a dispositive or even pertinent factor. Judge Lumbard wrote at 526 F.2d at 128:

> The defendant trustees, however, are entitled to be reimbursed for those fees incurred in defending their behavior in the non-Perry payments. The beneficent aims of § 501 should not be frustrated by construing its terms with such uncompromising rigor that competent individuals are discouraged from assuming a fiduciary role in union affairs. A pension trustee who has acted blamelessly in a good faith effort to promote what he reasonably believed to be the purpose of the trustee should not be required to shoulder the burden of his defense when subsequent events prove his decision to have been an improvident one. See 3 Scott, The Law of Trusts, § 1884, at 1535 (3d ed. 1967).

The court of appeals enlarged upon that analysis by saying:

> Concern that the union subsidization of attorneys' fees will represent new bounty to alleged malefactors or enable officer-defendants financially to overwhelm the § 501 plaintiff is inapposite where, as here, the lawsuit has already terminated and the trustees have been substantially absolved. See generally, Counsel Fees for Union Officers Under the Fiduciary Provisions of the Landrum–Griffin, 73 Yale L.J. 443 (1964).

526 F.2d at 128–29.

The Yale Law Journal article cited by the Second Circuit for the latter proposition, under the caption "Mandatory Reimbursement Upon Vindication," states: "Beyond the question of the Union's power to indemnify the vindicative officer lies the further question of the officer's right to *compel* reimbursement from the union." 73 Yale L.J. at 463 (emphasis in original). The author advances various policy reasons why reimbursement of attorney's fees in such circumstances should be mandatory *Id.* at 463–469. It is reasonable to infer from the Second Circuit's citation of the article in *Morrissey v. Segal* that it agreed with the author's premise.

The issue turns upon principles of equity. *Milone v. English, supra,* at 306 F.2d 818. In the case at bar, the moving defendants were vindicated just as surely as by a judg-

ment in their favor after trial. When after a number of years of litigation defendants moved for summary judgment, plaintiffs were unable to point to any evidence or cite any authority sufficient to preserve the claims they had made against these former officers. The Union, under the direction of its new slate of officers, was entitled to commence and continue this action against the former officers. However, having failed to substantiate its claims against the moving defendants, the Union is required by principles of equity to pay their legal expenses. That I conceive to be the holding of *Morrissey v. Segal*. While the union in that case advanced legal expenses to the vindicated trustees, and no such advances were made or contemplated in the charged atmosphere of the case at bar, that is a distinction without a difference. The Union cannot transfer a refusal to advance an officer's legal expenses into a shield protecting it from equitable claims that arise when the Union cannot sustain its charges.

*Cassidy v. Horan*, 405 F.2d 230 (2d Cir. 1968), upon which plaintiffs place primary reliance, is not to the contrary. *Cassidy* holds only that where an individual union member commences a § 501 action against union officers and the action is dismissed, the officers' claim for payment of counsel fees must be made "to the local union through its governing board and members," 405 F.2d at 233, and not against the individual plaintiff. To the extent pertinent to the case at bar, *Cassidy* suggests that the moving defendants' claims lie against the union and not the individual plaintiffs. I do not undertake to resolve that issue because the motion papers do not squarely present it. But nothing in *Cassidy* speaks to the question of whether former officers may in the present circumstances require an unwilling union to reimburse legal expenses.

I hold that the moving defendants are entitled to do so, under the LMRDA and the cases construing it. In the view I take of the case I do not reach the other asserted bases for payment.

*Amount of the Claim*

■ Counsel for the moving defendants assert claims for attorneys' fees and disbursements totalling $551,854.61. To that they add fees and costs incurred with respect to the present motion totalling $19,332.37 ($6,739.66 on the original motion and $12,592.71 on the reply papers).

The time sheets presented by counsel are in proper form. The hourly amounts charged are reasonable. I reject plaintiffs' contention, for the most part expressed in conclusory terms, that the rates and times claimed are excessive.

Nevertheless, the claimed fees and expenses are subject to substantial reduction.

As noted, Mr. Stewart and the attorneys associated with him represent ten of the eleven defendants. Eight of those defendants obtained summary judgment dismissing the claims against them. Defendants Doris Turner and Telbert King did not. Accordingly, and appropriately, the present motion seeks attorneys' fees and expenses only in respect of the eight defendants who were successful. However, the time records submitted in support of the claim refer to services rendered to all ten defendants. A considerable percentage of the time involved relates to Turner or King. That is not surprising, since Turner was the president of the Union prior to the 1986 election and King was one of her principal associates. Counsel are not entitled to include time spent advising Turner or King in a claim for fees and expenses in respect of services rendered to the other eight defendants. Equity requires an allocation.

My examination of the time sheets indicates that one-third of the fees and expenses charged for the litigation should be allocated to counsel's defense of Turner and King. On this basis, I disallow one-third of the claim total of $551,854.61, or $183,951.53. The moving defendants may recover the balance of $367,903.08, together with $19,332.37 in respect of fees and costs on this motion, for a total recovery of $387,235.45.

Defendants ask that "the final fee award should be enhanced by 40% to account for taxes." No authority is cited for this startling proposition and I reject it.

The moving defendants are directed to settle a judgment consistent with this opinion on seven (7) days' notice on or before June 15, 1995.

It is SO ORDERED.