**Angela DOYLE; Frederick Gilliam; Betty Hughley; Georgianna Johnson, Plaintiffs,**

**Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, Plaintiff–Appellant–Cross–Appellee,**

v.

**Philip KAMENKOWITZ, Defendant,**

**Doris Turner; Telbert King; Herb Binger; Ramon P. Malave; Claude Ferrara; Jo–Ann Marshall; Barington Moore; Karl Rath; Floris Saunders; Floyd Shephard, Defendants–Appellees–Cross–Appellants.**

Nos. 721, 899, Dockets 96–7894(L), 96–7928(XAP).

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1996.

Decided June 2, 1997.

William B. Pollard, III, Kornstein Veisz & Wexler, LLP, New York City (James Reif, Gladstein, Reif & Meginniss, New York City, and Richard A. Levy, Levy, Pollack, Ratner & Behroozi, P.C., New York City, on the brief), for Plaintiff–Appellant–Cross–Appellee.

Gareth W. Stewart, New York City, for Defendants–Appellees–Cross–Appellants.

Before: FEINBERG, WALKER, AND JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

It is settled in this Circuit and others that a labor union may, consistent with § 501(b) of the Labor–Management Reporting Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*, *voluntarily* pay the attorney's fees of its officers who prevail in the defense of claims asserted against them on the union's behalf for breach of duty under § 501(a) of that Act. *See, e.g., Morrissey v. Segal,* 526 F.2d 121, 128–29 (2d Cir.1975). This appeal raises a question of first impression in this Circuit: whether a labor union may be *compelled* under § 501(b) of the LMRDA to reimburse such fees.

The United States District Court for the Southern District of New York (Haight, *J.*) concluded that prevailing union officers in such circumstances are entitled to reimbursement for their legal expenses under § 501(b), and ordered the union in this case—Local 1199, Drug, Hospital & Health Care Employees Union, RWDSU—to pay more than $387,000 in attorney's fees to several of its former officers, who won summary judgment dismissing federal and state-law claims filed by the Union and individual Union members.

We conclude that § 501(b) does not *compel* payment of attorney's fees, and we therefore vacate the district court's award entered on the basis of § 501(b), and remand this case for consideration of alternative grounds (either not raised or not ruled upon in the district court) on which an entitlement to fees may be predicated.

## BACKGROUND

The present fee dispute is an episode in a decade-long litigation between rival factions of union officials over control of the union in the early and mid-1980s.[1] The original complaint was filed in 1986 by four individual union members, pursuant to LMRDA § 501(a) and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* after the union itself joined the action, the plaintiffs (collectively, the "Union") filed two amended complaints raising additional claims under § 501(a) and RICO, as well as under New York Labor Law § 720 *et seq.* The thrust of the allegations was that the defendant officers had breached their fiduciary duties to the Union by embezzling and converting Union funds and other assets, and had "stolen" the Union's 1984 elections (and unsuccessfully tried to steal the 1986 elections as well) by stuffing ballot boxes; destroying valid ballots; denying Union members the right to vote; threatening, assaulting, and physically preventing members from exercising their rights under sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158; and covering up their illegal acts through mail and wire fraud. *See Doyle v. Turner,* No. 86–CV–2792 (CSH), 1993 WL 183788, at *1 (S.D.N.Y. May 27, 1993); Complaint ¶¶ 6–18; Amended Complaint ¶¶ 7–23; Second Amended Complaint ¶¶ 9–63.

By orders dated May 27, 1993 and July 5, 1994, the district court granted motions for summary judgment filed by eight of the eleven original defendant officers,[2] dismissing the Union's Second Amended Complaint with prejudice as to them (except for one claim against one defendant). *See Doyle,* 1993 WL 183788, at *11–*14; *Doyle v. Turner,* No. 86–CV–2792 (CSH), 1994 WL 323889, at *2 (S.D.N.Y. July 5, 1994). The Union continued to press its claims against the remaining

defendant officers, and all of the defendant officers continued to pursue counterclaims alleging that the Union was unlawfully withholding severance pay and vacation benefits to which they were entitled under "an unwritten policy of the Union." *See Doyle v. Turner,* No. 86–CV–2792 (CSH), 1994 WL 48854, at *1 (S.D.N.Y. Feb.16, 1994).

Meanwhile, the eight defendant officers who had won summary judgment moved for an award of costs and attorney's fees—the issue now here on appeal. They specified three sources of authority for an award of fees: (1) § 501(b); (2) the "bad faith" exception to the "American Rule" governing liability for attorney's fees; and (3) various provisions of New York State law regarding "reimbursement of corporate officers and directors who have been vindicated in litigation against them." *See Doyle v. Turner,* 886 F.Supp. 399, 400 (S.D.N.Y.1995). The district court addressed only the first ground; as explained in more detail below, the court held—pursuant to § 501(b)—that the defendant officers were entitled to recover, and the Union was required to pay, the legal expenses incurred by the defendant officers in successfully defending against the Union's lawsuit. *Id.* at 402.

The district court's order awarding fees was entered on July 17, 1995. The Union originally filed an appeal of that order to this Court on July 26, 1995. Ten months later (after briefing but prior to argument), this Court granted a motion by the defendant officers to dismiss the appeal for lack of a final judgment because other claims and counterclaims remained pending in the district court. Upon dismissal of the appeal, the fee judgment became final for purposes of enforcement, and the defendant officers

---

1. The history of this litigation, and the dispute underlying it, is documented in a series of opinions by the district court. *See Doyle v. Turner,* No. 86–CV–2792 (CSH), 1993 WL 183788 (S.D.N.Y. May 27, 1993); *Doyle v. Turner,* No. 86–CV–2792 (CSH), 1994 WL 48854 (S.D.N.Y. Feb.16, 1994); *Doyle v. Turner,* No. 86–CV–2792 (CSH), 1994 WL 323889 (S.D.N.Y. July 5, 1994); *Doyle v. Turner,* 886 F.Supp. 399 (S.D.N.Y.1995).

2. The eleven defendant officers named in the Union's complaint were: Doris Turner, Telbert King, Herb Binger, Ramon P. Malave, Claude Ferrara, Jo–Ann Marshall, Barington Moore, Karl Rath, Floris Saunders, Floyd Shephard, and Philip Kamenkowitz. All but Turner, King, and Kamenkowitz moved for, and were granted, summary judgment. *See Doyle v. Turner,* 886 F.Supp. 399, 402 (S.D.N.Y.1995).

collected the amount of the judgment ($387,-235.45) plus accrued interest.[3]

Eventually, the Union and the defendant officers settled their remaining claims and counterclaims, with prejudice, by way of a Stipulated Order of Dismissal (dated July 10, 1996). Among the other principal terms of the Stipulated Order: (1) the Union agreed to pay the defendant officers $750,000 in nine equal monthly installments;[4] (2) all parties expressly preserved their rights to appeal from the district court's July 17, 1995 fee judgment; and (3) all parties "agreed that by entering into th[e] settlement[,] no party ha[d] prevailed on any claim or counterclaim for the purpose of awarding attorneys' fees." The Union filed a timely appeal of the fee judgment, and the defendant officers filed a timely cross-appeal contesting the district court's reduction of the award by one-third to account for the fees attributable to the defendant officers who had not won summary judgment.

On appeal, both sides raise arguments that (variously) were not asserted in the district court, were not addressed there, or were not properly preserved for appeal to this Court. Thus the Union, despite failing to appeal from the district court's orders granting the defendant officers summary judgment, now argues that those orders were erroneous and should be subject to this Court's *de novo* review of summary judgment. The defendant officers, for their part, advance at least three new grounds for affirming the fee award: (1) reimbursement is justified by a "common benefit" analysis, because § 501(b) is a "trust statute"; (2) reimbursement is justified by "promissory-equitable estoppel," because the Union promised in writing (when the litigation started) to pay the costs of a successful legal defense; and (3) as a policy matter, vacating the award would "emasculate union democracy" by permitting unions to reimburse exonerated officers (or not) at whim.[5]

## DISCUSSION

Whether the Union was *compelled*, under § 501(b), to reimburse the defendant officers' attorney's fees is a question of law that we review *de novo*. *See, e.g., Mautner v. Hirsch*, 32 F.3d 37, 39 (2d Cir.1994) (*de novo* review is appropriate where appellant claims that fee award lacks a basis in law or fact).

As noted, the Union now urges that we address a preliminary issue: the correctness of the district court's summary judgment orders. According to the Union, those orders are "appropriately before this Court" because they constituted "[t]he predicate to the fee judgment," by making the defendant officers "prevailing defendants" for purposes of recovering fees, Union Brief at 29, and because an appeal from final judgment permits attack upon "all prior non-final orders and rulings which produce the judgment," Union Reply Brief at 19 (citation omitted). At the same time, the Union concedes that our reversal of summary judgment would "not reinstate the litigation," Union Brief at 29, and that "the summary judgment issues cannot be further pursued on the merits in the event of a reversal because the action has been dismissed with prejudice," Union Reply Brief at 20 n. 12. We conclude that all disputes bearing on the merits of the under-

---

**3.** The defendant officers first attempted to collect the fee judgment one year earlier, through a writ of execution filed on July 27, 1995. In an order dated August 8, 1995, the district court (Stein, *J.*) dissolved the writ and directed that execution on the judgment be stayed. The defendant officers filed a petition for a writ of mandamus challenging the district court's order, but this Court denied the petition. *See In re Ferrara*, No. 95–3064 (2d Cir. Sept. 26, 1995).

**4.** Pursuant to the Union's request at oral argument, this Court issued an order dated November 5, 1996 staying the Union's obligation to make the monthly payments under the Stipulated Order of Dismissal, pending resolution of this ap-

peal and any further decision on attorney's fees by the district court.

**5.** The defendant officers also argue that the case is not ripe for appeal because there has been no "judgment" in the district court within the meaning of Fed.R.Civ.P. 58, and hence no finality. This argument is meritless: the fee judgment from which the Union appeals was entered by the district court clerk on July 17, 1995; and the Stipulated Order of Dismissal was entered on July 15 the following year. Similarly, we reject the defendant officers' contention that, because all of the payments authorized by the Stipulated Order of Dismissal have not yet been made, the dismissal is only a "conditional order."

lying action were mooted by the Stipulated Order of Dismissal. The summary judgment orders made the defendant officers "prevailing" parties; the Union concedes that the merits cannot be reopened; and the Stipulated Order of Dismissal—which expressly provided that its entry would *not* have the effect of conferring status as a prevailing party for purposes of attorney's fees—did not vacate any prior orders that may have had that effect.

Because we reach the issue of attorney's fees under § 501(b), answer that question in the Union's favor, and vacate the district court's order awarding fees, we do not consider arguments challenging the particulars of the fee judgment, such as the amount of the award or the sufficiency of the evidence supporting it. In short, our discussion is limited to analyzing whether § 501(b) requires reimbursement of vindicated officers' attorney's fees.

## A

Section 501(b) creates a cause of action for individual union members who, having secured "leave of the court" to do so, seek "relief for the benefit of the labor organization," in circumstances where a union official "is alleged to have violated the [fiduciary] duties declared in subsection (a) of [§ 501]," and the union refuses or fails to sue for appropriate relief despite being requested to take such action. *See* 29 U.S.C. § 501(b). The statute also allows member-plaintiffs to receive reimbursement for their costs in pursuing the lawsuit:

> The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prose-

cuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

*Id.* The full text of the subsection is set out in the margin.[6]

As the district court observed, § 501(b) "does not deal expressly with the payment or reimbursement of attorney's fees incurred by union officers who are charged with violating their fiduciary duties." *Doyle,* 886 F.Supp. at 400. The statutory language, by its terms, deals only with reimbursement to successful plaintiffs, and contemplates payment only out of funds recovered on behalf of the union. Nevertheless, courts have construed this language so as not to bar payment of successful defendants' legal expenses out of the union's coffers. *See, e.g., Morrissey v. Segal,* 526 F.2d 121, 128–29 (2d Cir.1975); *Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir.1962); *Kerr v. Shanks,* 466 F.2d 1271, 1277 (9th Cir.1972); *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 182 F.Supp. 608, 622 (E.D.Pa.), *aff'd,* 284 F.2d 162, 164 (3d Cir.1960). But we do not think that the plain language of the statute can support the creation of a right of reimbursement against a union that is unwilling to pay; substantially for that reason, we conclude that § 501(b) does not compel such payment or reimbursement. *See, e.g., United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (citation omitted); *Greene v. United States,*

---

**6.** Section 501(b) reads in full:

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or

secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

29 U.S.C. § 501(b).

79 F.3d 1348, 1353 (2d Cir.1996) ("[T]he statutory language remains of paramount importance ... because '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.'") (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)) (internal quotation marks omitted).

Moreover, no case of which we are aware holds or suggests that a union may be compelled to reimburse attorney's fees. For example, in *Cassidy v. Horan,* 405 F.2d 230 (2d Cir.1968)—the case on which the Union places primary reliance, and which the district court undertook to distinguish—this Court denied attorney's fees to union officers who successfully defended a suit brought against them by a single union member. The district court had dismissed the complaint for failure to comply with the "leave to sue" requirement of § 501(b), and we affirmed. *See* 405 F.2d at 231–32. On the issue of fees, the *Cassidy* court stated: "Defendants seek counsel fees, by analogy to cases involving corporate officers and directors acquitted of wrongdoing. This claim, however, would seem to be one to be made, if at all, to the local union, through its governing board and members[.]" *Id.* at 233. We read this passage (as the Union urges) to signify that reimbursement of attorney's fees is not an entitlement available upon motion from the court, but rather a benefit that may or may not be sought from the union, and that, once sought, may be granted or denied solely in that quarter. As we demonstrate below, a union's power to grant reimbursement is subject to limitation, but neither § 501 nor any general equitable principle compels a union to grant reimbursement.

### B

In arriving at the opposite conclusion, the district court relied chiefly upon Judge Lumbard's opinion in *Morrissey v. Segal,* 526 F.2d 121 (2d Cir.1975). The court acknowledged that "[t]he question appears to be one of first impression," but concluded that "the rationale of *Morrissey v. Segal* entitles [the defendant officers] to the relief they seek"— *i.e.,* reimbursement of their attorney's fees

by the Union. *Doyle,* 886 F.Supp. at 401. According to the district court, the issue in the present case (as in *Morrissey*) turned "upon principles of equity": the Union's failure to substantiate its claims against the defendant officers (after years of litigation) meant that the eight defendant officers who had won summary judgment "were vindicated just as surely as by a judgment in their favor after trial," *id.* at 401–02; the Union was therefore "required by principles of equity to pay [the defendant officers'] legal expenses. That I conceive to be the holding of *Morrissey v. Segal.*" *Id.* at 402. Although the plaintiffs in *Morrissey* had "sought to recover [fee] payments" that the pension fund already had "advanced ... to the defendant trustees," the district court was of the view that "the *voluntary advancing of legal costs* to the accused trustees was *not* a dispositive or even pertinent factor" in that case. *Id.* at 401 (emphasis added). The district court thus concluded that the fact that "no such advances were made or contemplated in ... the case at bar," was "a distinction without a difference." *Id.* at 402. We disagree.

*Morrissey* involved a suit by union members under § 501 to recover wrongful pension payments made from the union's fund to certain ineligible employees. *See* 526 F.2d at 124. After the district court nullified the challenged pension payments, the plaintiffs sought to charge the individual pension fund trustees for the amounts wrongfully disbursed. *Id.* at 124–25. The district court ruled that, although the trustees had been negligent in authorizing one of the improper payments—to a union officer named Perry— the trustees nonetheless had "acted without fault in the other four instances in which payments were improperly made to [ineligible employees]," *id.* at 125; the trustees were thus exonerated as to *most* of the charges against them. But by then the fund already had reimbursed the trustees for *all* of their expenses in defending the suit. *See id.* The *Morrissey* district court decided that because the trustees were "personally responsible for that portion of their attorney's fees attributable to their culpable handling of the Perry transaction," they were required to remit to the fund the percentage

of their legal costs allocable to the defense of that transaction. *Id.*

On appeal, this Court considered a narrow question: "the extent to which the defendants may charge the [pension] fund for counsel fees incurred in defense of [the union's] action." *Id.* Given the posture of that case—the union having reimbursed the defendants in full—no issue arose as to what duty the union owed; the opinion dealt solely with the limits of what the union could do in the way of reimbursement if it so chose. At a later stage of proceedings in the same litigation, Judge Newman characterized our holding in *Morrissey* as merely the approval of a reimbursement that the union had the power to make:

> In *Morrissey v. Segal,* ... this Court upheld an allocation of *the costs of legal services that could be reimbursed by a union* in a § 501 action, where the defendant officer was held liable on some charges while other charges were dismissed. The Court *approved reimbursement* for his fees with respect to the dismissed charges.

*Morrissey v. Curran,* 650 F.2d 1267, 1277 (2d Cir.1981) (emphasis added).

Judge Lumbard's opinion in *Morrissey,* on which the district court relied, thus dealt with what was *permissible* by way of reimbursement rather than what was *mandatory.* That is illustrated by the *Morrissey* court's distinction of cases (cited by the trustees there) holding that union funds could not properly be expended for officials' personal defense "prior to a full determination on the merits." *Morrissey,* 526 F.2d at 127 (citing, *inter alia, Kerr v. Shanks,* 466 F.2d 1271, 1277 (9th Cir.1972); *Highway Truck Drivers and Helpers Local 107 v. Cohen,* 182 F.Supp. 608 (E.D.Pa.), *aff'd,* 284 F.2d 162, 163 (3d Cir.1960) ("*Highway Truckers I* ")). We emphasized in *Morrissey* that

"[a]lthough these decisions indicate that trustees *might seek reimbursement in the event that they were eventually exonerated, see, e.g., Holdeman v. Sheldon,* 311 F.2d 2, 3 (2d Cir.1962); *Highway Truckers I, supra,* at 622, in no case was it suggested that indemnification would be required or even proper after an adjudication that trustees had breached their duty to the union."

*Id.* (emphasis added). Because the trustees in *Morrissey* had *not* been "exonerated for their conduct in the Perry transaction," we concluded that "the policy behind § 501 requires that trust funds not be used to defray their litigation expenses." *Morrissey,* 526 F.2d at 127.

*Morrissey*'s citation to cases such as *Holdeman, Kerr,* and *Highway Truckers I*—for the proposition that the trustees "*might seek* reimbursement in the event that they were eventually exonerated," *see* 526 F.2d at 127 (emphasis added)—is also suggestive of *Morrissey*'s limited scope, because the issue considered (at least in part) by the cited cases was whether it was *permissible* under § 501 for a union to pay its officers' defense costs, or whether such reimbursement conflicted with the purposes of the LMRDA. As *Morrissey* indicates, the conclusion in each of the cited cases was that such reimbursement *is* acceptable, so long as the officers were "substantially absolved" and the payments were made after the termination of the lawsuit. *See id.* at 128–29; *see also, e.g., Kerr,* 466 F.2d at 1277 ("[T]he policy of permitting a union to reimburse its officers who have successfully defended themselves against charges of violating § 501 provides adequate protection of union officers from baseless litigation."); *Holdeman,* 311 F.2d at 3 (same); *Highway Truckers I,* 284 F.2d at 164.[7]

---

7. For similar reasons, the district court erred in distinguishing our opinion in *Cassidy v. Horan,* 405 F.2d 230 (2d Cir.1968), discussed in section A, *supra.* The district court noted that the only plaintiff in *Cassidy* was an individual union member, and concluded that *Cassidy*'s statement that a claim for counsel fees "would seem to be one to be made, if at all, to the local union," *see* 405 F.2d at 233, meant that the claim for legal fees (if any) could not be made against the plaintiff member. *See Doyle,* 886 F.Supp. at 402. Thus reasoning that "nothing in *Cassidy* speaks to the question of whether former officers may ... require an unwilling union to reimburse legal expenses," the district court held that the defendant officers in the present case *were* "entitled to [require such reimbursement], under [§ 501(b) of] the LMRDA and the cases construing it." *Id.* This reading is by no means implausible, but we conclude that it is incorrect. The cases *Cassidy*

The district court relied on passages in *Morrissey* that in isolation could suggest that unions do owe reimbursement of fees to officers who prevail in suits under § 501; for example:

> The defendant trustees, however, are entitled to be reimbursed for those fees incurred in defending their behavior in the non-Perry payments. The beneficent aims of § 501 should not be frustrated by construing its terms with such uncompromising rigor that competent individuals are discouraged from assuming a fiduciary role in union affairs. A pension trustee who has acted blamelessly in a good faith effort to promote what he reasonably believed to be the purposes of the trust should not be required to shoulder the burden of his defense when subsequent events prove his decision to have been an improvident one. *See* 3 Scott, *The Law of Trusts*, § 188.4, at 1535 (3d ed.1967).

*Morrissey*, 526 F.2d at 128. As the district court points out, the policy values expressed in this passage as justification for the union's voluntary award would justify mandatory reimbursement as well. The crucial point, however, is that the court in *Morrissey* was not required to find a *basis* for the reimbursement of fees, because the union in that case already had demonstrated its willingness to pay; and we do not think that the *Morrissey* court was creating or recognizing a general entitlement to reimbursement.[8] In any event, such an extension seems unwarranted in policy terms because, as this Court has said, the statutory requirement for a preliminary showing of merit under § 501(b) "in combination with a policy of *permitting a union to reimburse a defendant if he is successful* in his defense, or perhaps even

---

cites in discussing fees—*Highway Truckers I* and *Holdeman*—are the same cases cited by *Morrissey* for the proposition that exonerated trustees "might seek reimbursement" from the union, *see* 526 F.2d at 127, cases that (as noted) signify only that *voluntary* fee payments to vindicated union officers are *not prohibited* by the LMRDA.

**8.** The district court also mentioned *Morrissey's* citation to a student law review article that raised the question of a union officer's "right to compel reimbursement [of attorney's fees] from the union." *Doyle*, 886 F.Supp. at 401 (citation omitted). The district court stated that the arti-

where his actions were based on a reasonable judgment as to appropriate procedures and do not evidence bad faith, should provide sufficient financial protection of union officials against nuisance suits." *Holdeman*, 311 F.2d at 3 (emphasis added).

The district court therefore erred in deducing from *Morrissey* that reimbursement of attorney's fees is required by equitable principles. *See Doyle*, 886 F.Supp. at 401–02. This kind of fee-shifting is not something that we lightly assume. The Supreme Court recently reaffirmed, in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), that "Congress legislates against the strong background of the American Rule," and therefore that "unless Congress provides otherwise, parties are to bear their own attorney's fees." *Id.* at 534, 114 S.Ct. at 1033 (citing, *inter alia*, *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–62, 95 S.Ct. 1612, 1612–24, 44 L.Ed.2d 141 (1975)). *Fogerty* rejected a claim that attorney's fees should be awarded automatically under a statute that provided: "the court *may* also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* (emphasis added). The Court stated that "[t]he word 'may' clearly connotes discretion," which would be impinged by the "automatic awarding of attorney's fees to the prevailing party." *Id.* The Court concluded that, had Congress intended to make the recovery of fees under the statute automatic, "[s]uch a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment." *Id.*

The same analysis applies here. Section 501(b) states that "[t]he trial judge *may* allot

---

cle "advance[d] various policy reasons why [such] reimbursement . . . should be mandatory," and concluded: "[i]t is reasonable to infer from the Second Circuit's citation of the article in [*Morrissey*] that it agreed with the author's premise." *Id.* It is doubtful that the district court accorded any great weight to the article or to this Court's citation of it, but we agree with the Union that *Morrissey's* bare citation to the student article—without discussion or explanation—is an insufficient basis on which to conclude that mandatory reimbursement of attorney's fees is authorized by that opinion.

a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the [union] member...." 29 U.S.C. § 501(b) (emphasis added). Although the statute leaves the award of fees to the discretion of the trial judge, there is no mention whatever of fee reimbursement for prevailing *defendants*. Such payments, when voluntarily made, may not be precluded by the terms of § 501(b)—as *Morrissey* and other cases hold—but they plainly are not mandated by that statute.

We therefore hold that union officials who successfully defend against claims under the LMRDA for breach of fiduciary duty may not—by invoking § 501(b) or general equitable principles—compel reimbursement from the union for the costs of their legal defense (including attorney's fees). Accordingly, we vacate the district court's order awarding attorney's fees to the defendant officers in this case. Because the district court based its fee award solely on § 501(b), without considering other possible grounds, we remand this case to the district court to determine whether the defendant officers may be awarded attorney's fees (and have preserved the right to seek such fees) on other grounds or rationales, including those proffered in the district court (*i.e.*, the "bad faith" exception to the "American Rule" and various provisions of New York state law) and those argued here on appeal (*i.e.*, "common benefit" analysis, promissory estoppel, or preservation of union democracy).

### CONCLUSION

The order of the district court awarding attorney's fees to the defendant officers is vacated, and this case is remanded to the district court for further proceedings consistent with this opinion.